352 So.2d 690 (1977)
STATE of Louisiana
v.
Veronica BROWN.
No. 59916.
Supreme Court of Louisiana.
November 14, 1977.
Rehearing Denied December 14, 1977.
*692 Bobby L. Culpepper, Baker, Culpepper & Brunson, Jonesboro, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Charles B. Bice, Dist. Atty., Kermit M. Simmons, Douglas H. Allen, Asst. Dist. Attys., for plaintiff-appellee.
DIXON, Justice.
Veronica Brown was charged with possession of a controlled dangerous substance, to wit: phenmetrazine (also known as preludin endurets), in violation of R.S. 40:968(C), and forgery of a medical prescription by issuance or transference of a forged writinga medical prescription for phenmetrazinepurporting to have been written and signed by a licensed medical practitioner with intent to defraud and with knowledge that the prescription was forged, in violation of R.S. 14:72, paragraph 2.[1]
At a jury trial on October 7, 1976 defendant was found guilty as charged on both counts. She was sentenced on the possession charge to two years at hard labor and on the forgery charge to five years at hard labor, the sentences to run consecutively.
On appeal defendant assigns thirty-two errors as a basis for reversal of the conviction.
The facts surrounding commission of the crime follow.
On January 15, 1976 defendant Brown entered Briley's Pharmacy in Winnfield, Louisiana, accompanied by Frank Williams, Jr. Due to an ongoing investigation in forged prescriptions of controlled dangerous substances, undercover narcotics agent Danny Moreau was secreted behind the pharmacist's counter. Apparently, suspected prescriptions had been left at the pharmacy the day before and had been brought to Officer Moreau's attention. In addition, Trooper Robert Rigby was stationed at the courthouse across the street while two other officers patrolled the area. The four officers were in contact with one another by walkie-talkie.
Defendant Brown requested a prescription in the name of Pinkie Jones, and Williams requested a prescription in the name of A. D. Ruth. Mr. Briley, the pharmacist, filled both prescriptions and handed them to Brown and Williams while alerting Moreau by hand signal that these were the questioned prescriptions. Ms. Brown stated *693 that Williams would pay for the prescriptions, which he did.
Having observed the foregoing transaction, Moreau radioed Trooper Rigby that the suspects had just left the pharmacy. Rigby watched their movement to their car and alerted the other officers who stopped the car and arrested Brown, Williams and Billy Crishon, who was the driver of the vehicle. Pink pills were readily observable scattered on the front seat and floor boards in the front and back of the car, and were seized.
We find it necessary to reverse defendant's conviction based upon Assignment of Error No. 32.[2] Defendant contends *694 that the trial court erred in denying a motion for a new trial based, among other things, upon the allegation that there was no evidence of the offense charged. We find that the record is devoid of proof of certain essential elements of the crimes with which defendant was charged.
R.S. 14:72, paragraph 2, the forgery statute which defendant is alleged to have violated, provides:
"Issuing or transferring, with intent to defraud, a forged writing, known by the offender to be a forged writing, shall also constitute forgery."
There was sufficient proof offered that the prescriptions were forged. Chief Raymond Fargo, from the Office of Narcotics and Drug Control of the State Division of Health, testified that the two names found on the prescriptions, L. L. Lurent and C. J. Balm, purporting to be signatures of a physician or dentist, did not appear on the official list of persons licensed to prescribe controlled dangerous substances. Nor were these names registered with the Louisiana Board of Medical Examiners to practice medicine. Two physicians, whose names were similar to those on the prescriptions, were called to testify; both Dr. C. C. Laurent, Jr. and Dr. G. C. Bahm, Jr. testified that the signatures were not their own, and that they had not written prescriptions for the patients named.
There is lacking, however, proof of an essential element of the offense of forgeryknowledge that the writings were forged. The only evidence offered in this regard was proof that the prescriptions were forged, that Ms. Brown, along with Frank Williams, Jr., appeared at the store to pick them up, and that upon Ms. Brown's arrest the pills were found scattered throughout the car. As a matter of law, this evidence was insufficient to prove the "scienter" element of the crime of forgery. There is no evidence that defendant knew the prescriptions were forged.
The same result follows in regard to the possession offense. R.S. 40:968(C) provides:
"It is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance classified in Schedule III unless such substance was obtained directly or pursuant to a valid prescription or order from a practitioner, or as provided in R.S. 40:978, while acting in the course of his professional practice or *695 except as otherwise authorized by this part. . . ."
(Phenmetrazine is listed in Schedule III, R.S. 40:964(A)(1) and, therefore, is a controlled dangerous substance). It is necessary for the alleged offender to have knowledge that the prescription is not valid in order to violate the statute.
Thus, we hold that proof of an essential element of both offenses was lackingknowledge that the prescription was forged (on the forgery charge) and knowledge that the prescription was invalid (on the possession charge). Therefore, the motion for a new trial should have been granted.
For the reasons assigned, the convictions are reversed, the sentences set aside, and the case is remanded for a new trial.
SANDERS, C. J., dissents.
SUMMERS, J., dissents.
MARCUS, J., dissents and assigns reasons.
MARCUS, Justice (dissenting).
In criminal cases, the scope of our appellate review does not extend to an examination of the sufficiency of the evidence but rather is limited to the view of a properly raised allegation that there is no evidence of an essential element of the crime charged. I consider that there was "some evidence" that defendant knew that the prescription was forged and that she "knowingly and intentionally" possessed the controlled dangerous substance which was not obtained pursuant to a valid prescription. Intent, though a question of fact, need not be proven as a fact; it may be inferred from the circumstances of the transaction. La.R.S. 15:445. Accordingly, I respectfully dissent.
NOTES
[1] Defendant was also charged with violations of R.S. 40:971(B)(1)(b), acquiring or obtaining possession of a controlled dangerous substance by misrepresentation, fraud, forgery, deception or subterfuge, and R.S. 14:72, paragraph 1, the forging of a signature or part of a writing with intent to defraud. The State, however, elected not to try her on those counts.

Also joined in the bill of information were Frank Spellman Williams, Jr. and Billy Crishon. Williams pled guilty to two counts of the bill of information, was sentenced by the court, and died before defendant Brown's trial. Crishon was released on bond and thereafter jumped bail; he was at large at the time of defendant's trial.
[2] Defendant's other assignments are without merit.

No. 1The answers to the bill of particulars were sufficient. A bill of particulars may not be used to discover details of evidence with which the State expects to prove its case. State v. Walker, 344 So.2d 990 (La.1977). In particular, defendant may not discover the names of State witnesses, witness statements, State v. Phillips, 343 So.2d 1047 (La.1977), defendant's own oral inculpatory statements, State v. Hatter, 338 So.2d 100 (La.1976), or inculpatory statements of co-defendants, State v. Cardinale, 251 La. 827, 206 So.2d 510 (1968).
No. 2Defendant assigns error to denial of her motion to sever. Williams' death before Ms. Brown's trial, and Crishon's absence, mooted the assignment. See footnote 1.
No. 3Defendant contends the trial court erred in finding probable cause after a hearing on her application for a preliminary examination. This court has consistently held that the question of probable cause is moot once a defendant has been tried and convicted by a jury. State v. Walker, supra.
No. 4Defendant contends evidence should have been suppressed since it was illegally obtained in that defendant was entrapped. The evidence clearly shows that no entrapment was involved. Furthermore, entrapment is a factual question for the jury's determination. State v. Bates, 301 So.2d 619 (La.1974). Our appellate jurisdiction extends only to questions of law.
Nos. 5, 6, 7Defendant objects to the admission of Officer Moreau's testimony regarding what she said in the pharmacy since she was not afforded the C.Cr.P. 768 notice, and regarding what Williams said since that was hearsay. Those statements constituted part of the res gestae as "necessary incidents of the criminal act," State v. Joseph, 341 So.2d 861, 867 (La.1977); R.S. 15:448, and therefore were admissible into evidence. Article 768 has no application to res gestae statements. State v. Richmond, 278 So.2d 17 (La.1973).
Nos. 8, 9Defendant contends photographs of the prescriptions should have been inadmissible in evidence. Introduction of a mechanical reproduction of an original is not reversible error unless it is shown that the contents of the purported copy do not accurately reflect the original. State v. Stuart, 344 So.2d 1006 (La.1977).
Nos. 10, 12Defendant objects to admission of a photograph of her, arguing that a proper foundation had not been laid and that she was not advised of her constitutional rights before the photograph was taken. Identification of demonstrative evidence can be made at trial, or by establishing the chain of custody. State v. Dotson, 260 La. 471, 256 So.2d 594 (1971). Officer Moreau identified the photograph as the one he took of defendant. There is no requirement that defendant be informed of her constitutional rights before a photograph is taken. Such evidence is non-testimonial in nature and does not violate defendant's privilege against self-incrimination. See Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).
No. 11Defendant contends that a mistrial should have been granted based upon the following testimony of Officer Moreau regarding the photograph taken of Ms. Brown:
"A. Yes sir, this is the picture that I took of the subject.
"Q. Okay. Now, approximately when was that taken?
"A. We . . . After all of the arrests were made . . . there were other arrests made that day and . . ." (Emphasis added).
Clearly the comment made about "other arrests" was not in reference to arrests of defendant. Defendant was in no way prejudiced, therefore no mistrial was warranted. See C.Cr.P. 771, 775.
Nos. 13, 14, 15, 16Defendant contends that questions asked of Drs. Laurent and Bahm, called to testify to prove forgery, were irrelevant. Their testimony was relevant; it tended to show the commission of the offense. R.S. 15:441.
No. 17There is no merit to defendant's contention that a police officer's testimony that defendant was informed of her Miranda rights by the standard form used by the sheriff's department was a comment on defendant's failure to testify.
Nos. 18, 24, 25, 26, 27, 28Defendant contends that the requisite foundation for introduction of the evidence seized, the two pharamaceutical bottles containing the phenmetrazine and the evidence envelope in which they were enclosed, was not made. We construe her argument to be based on an allegation of lack of probable cause for arrest. The evidence discloses that there was reasonable cause to make the warrantless arrest. C.Cr.P. 213(3), and that the seizure of the evidence, which was in plain view, was valid.
Nos. 19, 20, 21, 22, 23Defendant contends there was error in the admission of certain testimony while the State was laying its predicate for admission of seized evidence. She objects first to hearsay testimony regarding what one officer told another over the walkietalkie while preparing to arrest defendant. This hearsay testimony, which was outside the presence of the jury, was admissible for purposes of determining probable cause. State v. Devenow, 253 La. 796, 220 So.2d 78 (1969). Next she objects to Trooper Rigby's testimony that he knew the prescriptions were forged and that Williams had a past record as a drug user. This testimony was admissible for purposes of establishing probable cause for the arrest.
No. 29Defendant contends the trial judge erred in denying her motion for a directed verdict. The amended version of C.Cr.P. 778 was effective on the date of trial. It provides that only in bench trials can a judge direct a verdict at the close of the State's case.
No. 30Defendant contends that a mistrial should have been granted when the State, in closing argument, made a reference to evidence that was not part of the record:
". . . The prescriptions were left the day before. Who called for the prescriptions? She called for Pinkie Jones. He called for the A. D. Ruth prescription. I suggest to you that these prescriptions got in the pharmacy some way. Mr. Briley didn't take them in. None of the agents took them in. She and Mr. Williams took them in the day before and left them. ". . . (Emphasis added).
In order to mandate a mistrial from improper closing argument, the court must be thoroughly convinced the jury was influenced by the remarks and that they contributed to the verdict. State v. Lockett, 332 So.2d 443 (La.1976).
No. 31Defendant contends her motion in arrest of judgment was improperly denied. Defendant is incorrect in her argument that phenmetrazine is not a controlled dangerous substance. It is specifically listed in Schedule III, R.S. 40:964(A)(1). Defendant also incorrectly argues that there was no evidence to show the offenses occurred in Winn Parish. Defendant is correct in her contention that the offenses were not proven; however, the proper vehicle to raise that objection is a motion for a new trial.