410 So.2d 1085 (1982)
STATE of Louisiana
v.
Lorena GOINER.
No. 81-KA-1825.
Supreme Court of Louisiana.
March 1, 1982.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Abbott J. Reeves, P. Michael Cullen, Asst. Dist. Attys., for plaintiff-appellee.
William R. Ary, New Orleans, for defendant-appellant.
BURRELL J. CARTER, Justice Ad Hoc.[*]
Defendant, Lorena Goiner, was charged by Bill of Information with knowingly and intentionally acquiring and obtaining possession of a controlled dangerous substance, *1086 Pentazocine, commonly known as Talwin, by fraud and deceit, in violation of La.R.S. 40:971, and in a second count she was charged with violation of La.R.S. 40:969 in that she did knowingly and intentionally possess a controlled dangerous substance, Talwin. Defendant Goiner waived a trial by jury, and on December 8, 1980, was found not guilty of the first count (obtaining possession of a controlled dangerous substance by fraud and deceit), but was found guilty of the second count of possession of Talwin. On February 23, 1981, she was sentenced to serve three years' imprisonment. Appeal has been taken seeking reversal of her conviction and sentence with one assignment of error.
Defendant contends that the trial court erred in finding her guilty of possession of Talwin because there was no evidence that she possessed the drug illegally, and there was no evidence that she had "guilty knowledge" that the drug was a controlled dangerous substance.
Louis R. Capaci, owner of Driftwood Drugs, Inc., testified that on July 21, 1980, a black female brought in a prescription for Talwin. The prescription was in the name of Helen Johnson. Suspecting that the prescription was forged, Capaci told the female he did not have enough pills to fill the prescription. He dispensed 15 or 20 tablets and told her to come back the next day. He attempted to contact the doctor whose name was on the prescription but was unable to do so until the next morning, at which time he was advised that the prescription had not been written by the doctor.[1] Capaci then called the police and told them that the female would be picking up the rest of the prescription around 5:30 P.M. (During the day defendant Goiner called several times to find out when she could come back and pick up the remainder of the prescription.) Upon receiving Capaci's call, two policemen went to the store and arrested the defendant after she had paid for the prescription and was attempting to leave. At trial the defendant was identified as the person who originally brought in the prescription, received a partial filling of same and who picked up the rest of the Talwin on the next day.[2] Capaci stated that after the prescription was filled, he placed the dispensing vial into a brown bag, then closed and sealed the bag. He could not recall having any conversation with the defendant regarding the contents of the prescription.
It is abundantly clear that defendant Goiner, the person arrested in the drugstore with the Talwin, (although not identified at the trial by Capaci), was the same person who originally obtained a partial filling of the prescription and who returned to obtain the rest of the narcotics.
Louisiana jurisprudence has firmly established that "guilty knowledge" is an essential element of the crime of possession *1087 of a narcotic drug. State v. Brown, 352 So.2d 690 (La.1977); State v. Elzie, 343 So.2d 712 (La.1977); State v. Green GMC Van, 354 So.2d 479 (La.1977); State v. Perique, 340 So.2d 1369 (La.1976); State v. Marks, 337 So.2d 1177 (La.1976); State v. Mims, 330 So.2d 905 (La.1976); State v. Knight, 298 So.2d 726 (La.1974); State v. Smith, 257 La. 896, 244 So.2d 824 (1971); State v. Smith, 257 La. 1109, 245 So.2d 327 (1971); State v. Kreller, 255 La. 982, 233 So.2d 906 (1970); State v. O'Brien, 255 La. 704, 232 So.2d 484 (1970); State v. Williams, 250 La. 64, 193 So.2d 787 (1967).
Counsel for defendant contends that a person cannot be convicted of a drug offense without proof that he knew that the substance in his possession was an illegal drug. He asserts that there is no direct evidence here to indicate that the defendant had "guilty knowledge". Counsel propounds the question, "How then can a person receiving a sealed brown paper bag from a pharmacist have guilty knowledge and this guilty knowledge amount to proof beyond a reasonable doubt?" Since the defendant here was found not guilty of obtaining drugs by fraud and deceit, she must, asserts counsel, be innocent of any guilty knowledge of the crime of possession of a controlled dangerous substance. Counsel further argues that, assuming every fact to be proved that the evidence tends to prove, that in order to convict, the evidence must exclude every reasonable hypotheses of innocence. La.R.S. 15:438; State v. Elzie, 343 So.2d 712 (La.1977).
Whether the accused knew the substance was a narcotic drug is a matter of proof by direct or circumstantial evidence. State v. Mims, 330 So.2d 905 (La. 1976); State v. Perique, 340 So.2d 1369 (1976). The question of sufficiency of the evidence is a matter not for this Court, but for the jury or trial judge. However, the proof must be sufficient to convince the trier of fact of the existence of every element of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Landry, 381 So.2d 462 (La.1980); State v. Byrd, 385 So.2d 248 (La.1980).
The facts in the instant case are very similar to the factual situation presented in State v. Brown, 352 So.2d 690 (La.1977). In State v. Brown, defendant Brown was charged with possession of a controlled dangerous substance and additionally charged with obtaining a controlled dangerous substance with a forged prescription. After a jury trial finding Brown guilty, this Court reversed the convictions, holding that proof of an essential element of both offenses was lackingknowledge that the prescription was forged (on the forgery charge) and knowledge that the prescription was invalid (on the possession charge). The facts briefly stated are as follows: On January 15, 1976, defendant Brown entered Briley's Pharmacy in Winnfield, La., accompanied by Frank Williams, Jr. Due to an ongoing investigation of forged prescriptions of controlled dangerous substances, undercover narcotic agents were secreted behind the pharmacist's counter. Apparently, suspected prescriptions had been left at the pharmacy the day before and had been brought to Officer Moreau's attention. Trooper Robert Rigby was stationed at the courthouse across the street and two other officers patrolled the area. The four officers were in contact with one another by walkietalkie.
Defendant Brown requested a prescription in the name of Pinkie Jones, and Williams requested a prescription in the name of A. D. Ruth. Mr. Briley, the pharmacist, filled both prescriptions and handed them to Brown and Williams while alerting Moreau by hand signal that these were the questioned prescriptions. Williams paid for the prescriptions and both Brown and Williams left. Law enforcement officers watched their movements and subsequently stopped their car, and Brown, Williams and Billy Chiasson, the driver, were arrested. Pink pills, readily observed scattered on the front seat and floorboards in the front and back of the car, were seized.
The Court reversed the convictions and remanded the case for a new trial stating that the only evidence offered in regard to *1088 "guilty knowledge" was proof that the prescriptions were forged, that defendant Brown along with Williams appeared at the store to pick them up, and that upon Brown's arrest the pills were found scattered throughout the car. This Court stated that as a matter of law, this evidence was insufficient to prove the "scienter" element of the crime of forgery and that there was no evidence that the defendant knew the prescription was forged. This Court further stated that the same result necessarily followed in regard to the possession offense. In the Brown case, the State argued in its closing arguments that defendants Brown and Williams were the same parties who had taken the prescriptions on the day prior to their arrest, but there was no evidence in the record of the trial to prove this. In the instant case, it is clear that defendant Goiner was the party who brought the forged prescription to the pharmacist, obtained a partial filling of same and then returned the next day to obtain the rest of the prescription. Since the defendant obtained a partial filling of the prescription and was the same party who returned and was arrested obtaining the rest of the drugs, there is sufficient circumstantial evidence to show that the defendant knew the substance in the bag was Talwin, a controlled dangerous substance. However, in a possession case, when drugs are obtained by an invalid prescription, "guilty knowledge" is twofold. First, the accused must have knowledge that the substance he is obtaining is a controlled dangerous substance and second, he must have knowledge that such substance was obtained pursuant to an invalid (forged, etc.) prescription or order. R.S. 40:969 C provides:
"It is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance classified in Schedule IV unless such substance was obtained directly or pursuant to a valid prescription or order from a practitioner, or as provided in R.S. 40:978 while acting in the course of his professional practice or except as otherwise authorized by this part...."
Although the State has met the first test, that is, has proven, by circumstantial evidence, that the defendant had "guilty knowledge" that she was in possession of a controlled dangerous substance, we find that the second requirement of "guilty knowledge" namely, knowledge that such substance was obtained pursuant to an invalid prescription or order (forged in this case) is missing. The trial judge, in fact, acquitted defendant Goiner of the charge of obtaining possession of a controlled dangerous substance by fraud and deceit and in so doing eliminated this essential element of the offense of possession of a controlled dangerous substance with an invalid prescription or order. There was no evidence, direct or circumstantial, to establish an essential element of the State's case, namely, that defendant Goiner had "guilty knowledge" that the prescription was invalid. State v. Brown, supra, requires that this conviction be reversed.
REVERSED.
MARCUS, J., dissents and assigns reasons.
MARCUS, Justice (dissenting).
I agree with the majority that the state proved that defendant had "guilty knowledge" that she was in possession of a controlled dangerous substance (talwin); however, I do not agree that the state has the burden of proving that defendant had knowledge that the substance was obtained pursuant to an invalid prescription or order. Rather, I consider it a matter of defense whether the substance was obtained pursuant to a valid prescription or order. Since defendant did not make such a showing in the instant case, she was properly convicted of unlawful possession. Accordingly, I respectfully dissent.
NOTES
[*] Judges Melvin A. Shortess, Burrell J. Carter and Felix N. Savoie, Jr. of the First Circuit Court of Appeal participated in this decision as Associate Justices Ad Hoc, joined by Chief Justice Dixon and Associate Justices Calogero, Marcus and Dennis.
[1] It was stipulated at the commencement of the trial that the prescription was not written by Dr. Edward T. Krementz, and if he were called to testify, that he would testify that he did not write this prescription.
[2] The following appeared in the record: 
R. pp 25:
Q. Did you tell anything to the police when the black female entered the store?
A. When she approached the register, as I recall, one of us recognized her___I recognized her and I told the police that this was the lady that had brought the prescription in on the previous day.
R. pp 28, 29
Q. Now, when the scrip was given or when you received the scrip yourself, did you speak with the person who had dropped it off, to your knowledge?
A. To my knowledge, I don't remember___the only thing that I remember is that when the prescription came across the counter. I do remember looking up and noticing who the lady was that passed the prescription___I also remember that she was the same person that picked the prescription up the following day.
R. pp 32, 33
Q. Was the person seated next to me the person that picked the prescription up on the twenty-second?
A. I can't tell you for sure if it was. The only thing I can remember is that that person that dropped the prescription off was the person that picked it up and too much time has lapsed___I just can't remember if she is, in fact, the lady that picked the prescription up or not.