985 So.2d 792 (2008)
STATE of Louisiana
v.
Darren FRITH.
No. 08-KA-52.
Court of Appeal of Louisiana, Fifth Circuit.
April 29, 2008.
*793 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Thomas J. Butler, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Margaret S. Sollars, Attorney at Law, Louisiana Appellate Project, Thibodaux, Louisiana, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., WALTER J. ROTHSCHILD, and GREG G. GUIDRY.
GREG G. GUIDRY, Judge.
Defendant, Darren Frith, appeals from his two convictions, on Count 1 for possession of a firearm by a convicted felon and on Count 2 for possession of cocaine, and his sentences, respectively, to 15 years at *794 hard labor, without benefit of parole, probation or suspension, and a $5,000.00 fine, and three and one-half years at hard labor, to be served consecutively. For the reasons which follow, we affirm.
On March 13, 2007, the Jefferson Parish District Attorney's Office filed a bill of information charging the Defendant in count one with possession of a firearm by a convicted felon, a violation of La. R.S. 14:95.1, and in count two with possession of cocaine, a violation of La. R.S. 40:967(C). At his arraignment, the Defendant pled not guilty. The Defendant filed a motion to suppress inculpatory statements and a motion to suppress the evidence, both of which the trial court subsequently denied. The case went to trial before a jury.
At trial, Agent Patrick O'Brien, a probation and parole officer with the Department of Public Safety and Corrections, testified that he requested a warrant for a parole violation on fugitive parolee Ricky Montegut. Agent O'Brien was Montegut's parole officer. The warrant was issued on December 18, 2006. On January 25, 2007, information was received from an anonymous informant that Montegut knew he was wanted and was hiding out at 633 Nel Court, Apartment B, in Jefferson Parish, the residence of Jessie Reed.[1] Agent O'Brien thought the information was credible because Montegut had previously told him that Jessie Reed was his best friend. In an investigation of the residence located at 633 Nel Court, Agent O'Brien learned that another parolee, Tyrone Reed,[2] also lived at that address with a female relative who leased the apartment.
Agent Rick Weidenhaft, a parole and probation specialist with the State of Louisiana Department of Probation and Parole, testified that he assisted in the search for Montegut. Upon entering the apartment at 633 Nel Court, Agent Weidenhaft proceeded to the loft area accessed by a spiral staircase in the second floor master bedroom. He found the Defendant alone in the loft. The Defendant was lying on the only mattress in the room. Agent Weidenhaft did not perform a search of the loft for guns or evidence at that time. Agent Weidenhaft admitted that he did not see any firearms or drugs in plain view.
Officer Prudhomme with the State of Louisiana Department of Corrections, New Orleans District Probation and Parole, assisted in the search. She testified that Reed opened the door to the apartment. Officer Prudhomme did not see any other occupants in the downstairs area so she proceeded upstairs and found several occupants on the second floor. Officer Prudhomme observed the Defendant accompanied by Agent Weidenhaft descending the spiral staircase from the loft located in the back corner of a bedroom. Officer Prudhomme did not see anyone other than the Defendant and Agent Weidenhaft descend the staircase. The occupants of the residence were escorted downstairs as they were found.
Agent Bryan Polson, a former agent with the State of Louisiana Department of Probation and Parole, also participated in the search for Montegut. He testified that during the search, he found a .45 caliber Llama Maxi handgun, model 1911, in a small cabinet above the kitchen stove. *795 The gun was loaded, and there was one round in the chamber. Agent Polson also found a shoebox containing crack cocaine and cash beneath a pillow that was under the left-hand side of the bed in the upstairs master bedroom. This is the bedroom with the spiral staircase that accessed the loft. Agent Polson identified the labeled crack cocaine, in court, and testified that it was indicative of the crack cocaine found in the residence.
Officer Prudhomme testified that after a gun was found in the kitchen, the residence was searched. When she went upstairs in the loft, Officer Prudhomme saw something bulging on the side of the mattress that was lying on the floor. As Officer Prudhomme lifted the thin mattress, she found a .9 millimeter handgun under the mattress, with the butt of the gun bulging toward the side of the mattress. Officer Prudhomme identified the.9 millimeter handgun in court. Officer Prudhomme admitted that the gun would not have been noticed if someone just walked in the room. In the loft, Officer Prudhomme also found a cell phone and some clothes including a pair of pants that belonged to the Defendant. The cell phone was found on the edge of the right-side of the mattress. The Defendant informed Officer Prudhomme that he had been sleeping in the loft since he moved into the apartment two weeks earlier. The Defendant did not tell Officer Prudhomme that anyone else stayed in the loft.
When Officer Prudhomme went downstairs, she read the Defendant his rights. The Defendant indicated that he understood his rights. Later, in Officer Prudhomme's presence, a Jefferson Parish Sheriff's officer read the Defendant his rights again. The Defendant again indicated that he understood his rights. Officer Prudhomme did not fill out a rights of arrestee form because she does not have those forms and, therefore, does not carry them with her. After the Defendant was informed of his rights, "[h]e stated that he was going to take all the charges, that the guns and drugs were his, and that he was taking the charge." After a deputy asked the Defendant, "Are you sure you want to do that, do you know what you're doing?" the Defendant repeatedly stated, "Yeah, it's mine, I'm taking the charge." According to Officer Prudhomme, when the Defendant made the statements, Jessie Reed was sitting next to him, and the female occupants were seated on the floor. None of the other occupants of the apartment, including Jessie Reed, claimed ownership of the guns or drugs, nor did they say that the guns and drugs belonged to Montegut. According to Officer Prudhomme, Reed denied that the guns and drugs were his at his parole revocation hearing.
Agent O'Brien and Agent Polson corroborated the testimony of Officer Prudhomme regarding the Defendant being read his rights, his understanding of them, and his insistence that the gun and drugs were his and he wanted to take the charges.
Jessie Reed testified for the defense. He stated that he resided at 633 Nel Court with his sister Jessica. Jessie Reed testified that he knew Montegut. However, Montegut never stayed at his residence. According to Jessie Reed, the Defendant only stayed at his residence once or twice. The Defendant never lived there. He and the Defendant did not get along. Jessie Reed testified that the Defendant did not arrive early on January 25, 2006. Instead, the Defendant must have arrived after 10:30 or 11:00 p.m., after Jessie Reed went to bed. Sometime later, Jessie Reed awoke and saw the Defendant downstairs in his front room. According to Jessie Reed, his cousin Donald Reed, who is now deceased, used to live in the loft area. *796 Donald Reed's possessions, i.e., clothes and tennis items, were still in the loft, on January 25, 2007.
Jessie Reed testified that he had recently been shot. He stated that Donald Reed bought the two guns found in the apartment "off the street," for protection, in response to the shooting. Donald told Jessie that he was going to put one of the guns in the kitchen on the shelf. According to Jessie Reed, it was Donald's gun that was found by the officers in the kitchen cabinet. Jessie Reed never knew exactly where Donald put the other gun. However, Jessie Reed thought that Donald's gun was the gun the police found upstairs in the loft, which had been in Donald's room.
Jessie Reed also testified that he did not know anything about the cocaine found in his apartment. However, he was aware that the police found someone in a stolen and abandoned car outside his door, brought that individual into his residence, and then removed the same individual 30 minutes later. Jessie Reed admitted that he did not see the officers plant any drugs.
According to Jessie Reed, on the night the officers entered his residence, all the occupants were brought downstairs. No one was read their rights. The officers asked him if he knew where to find Montegut. According to Jessie Reed, the Defendant never admitted ownership of the guns and drugs. Rather, when Jessie Reed admitted that the guns belonged to him, the police told him that they understood his situation and to sit down. Jessie Reed's two aunts and his sister were arrested. Jessie Reed testified that he was told that his sister was arrested because she was on the lease. The officers ignored him when he told them that he was on the lease. Consequently, he made an affidavit detailing what happened and stating that the guns found by the police belonged to him once his brother Donald died. Jessie Reed also admitted that he knew that the.9 millimeter found by the police was stolen. He stated that he did not know if the Defendant knew that the gun was in the residence.
At trial, the defense stipulated that the Defendant had pled guilty to attempt possession with intent to distribute cocaine in 2001, within 10 years of the commission of the instant offense. The defense also stipulated that the white powder found in the apartment was tested by Charles S. Crone, who would be considered an expert in testing and analysis of controlled dangerous substances, and it was determined to be cocaine, weighing 8.38 grams.
After the one-day trial, the Defendant was found guilty as charged on both counts. The trial court sentenced the Defendant on count one to 15 years at hard labor to be served without benefit of parole, probation, or suspension of sentence and imposed a fine of $5,000.00. The trial court sentenced the Defendant on count two to three and a half years at hard labor, the sentences to be served consecutively. It is from these convictions and sentences that Defendant appeals.
The Defendant assigns only one error on appeal. He argues that the evidence presented at trial was insufficient to support the convictions. The Defendant admits his previous felony conviction but argues that the State failed to prove beyond a reasonable doubt that he knowingly possessed a gun or the cocaine. The Defendant contends that his conviction was based solely on the testimony of law enforcement officers, who testified that they heard him say that he would take the charges. The Defendant claims that Jessie Reed's testimony, that the guns were originally purchased by Donald Reed, but belonged to Jessie since Donald's death, refuted the officer's testimony. The Defendant asserts *797 that Jessie Reed's testimony was credible because his admitted ownership of the guns would allow him to be prosecuted for a felony. Jessie Reed also testified that the Defendant did not live at the residence, negating constructive possession by Defendant.
The State argues that it presented sufficient evidence to support the conviction and rebut the Defendant's claim that the guns and drugs were not his. The State claims that through the testimony of the law enforcement officers it proved that the Defendant admitted that he owned the guns and drugs that were found in the apartment.
In evaluating the sufficiency of the evidence to support a conviction, a reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Ordodi, 06-0207, p. 10 (La.11/29/06), 946 So.2d 654, 660; State v. Captville, 448 So.2d 676, 678 (La.1984). The fact-finder weighs the respective credibilities of the witnesses, and the appellate court will not second-guess those determinations beyond the sufficiency evaluations under the Jackson standard of review. Ordodi, 06-0207 at 10, 946 So.2d at 660; State v. Dabney, 02-934 p. 1 (La.4/9/03), 842 So.2d 326, 327; State ex rel. Graffagnino v. King, 436 So.2d 559, 563 (La.1983). A determination of the weight to be given certain evidence is a question of fact, resting solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witnesses. State v. Silman, 95-0154, p. 12 (La.11/27/95), 663 So.2d 27, 35. However, we are mindful that the touchstone of Jackson v. Virginia is rationality and that "irrational decisions to convict will be overturned, rational decisions to convict will be upheld, and the actual fact-finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law." State v. Davis, XXXX-XXXX p. 2-3 (La.6/27/03), 848 So.2d 557, 558 citing State v. Mussall, 523 So.2d 1305, 1310 (La.1988) (emphasis in original).
Additionally, where circumstantial evidence forms the basis of the conviction, the evidence must exclude every reasonable hypothesis of innocence, "assuming every fact to be proved that the evidence tends to prove." La. R.S. 15:438; State v. Neal, 00-0674 p. 9 (La.6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002). The statutory requirement of La. R.S. 15:438 "works with the Jackson constitutional sufficiency test to evaluate whether all evidence, direct and circumstantial, is sufficient to prove guilt beyond a reasonable doubt to a rational jury." Neal, 00-0674 at 9, 796 So.2d at 657.
In the present case, the Defendant was convicted of possession of cocaine. La. R.S. 40:967(C) provides in pertinent part that "it is unlawful for any person to knowingly or intentionally possess a controlled dangerous substance as classified in Schedule II...." Cocaine is classified as a Schedule II drug under La. R.S. 40:964(A)(4). The Defendant was also convicted of possession of a firearm by a person convicted of a felony. La. R.S. 14.95.1 states in pertinent part, "[i]t is unlawful for any person who has been convicted of ... any violation of the Uniform Controlled Dangerous Substances Law which is a felony, ... or any crime defined as an attempt to commit one of the above-enumerated offenses under the laws *798 of this state ... to possess a firearm or carry a concealed weapon."[3]
Possession of contraband or a firearm can be by either actual possession or constructive possession. Guilty knowledge is an essential component of any showing that a defendant has constructive possession of contraband, i.e., dominion and control over it although the contraband is not in his actual possession. State v. Pigford, 05-0477, p. 7 (La.2/22/06), 922 So.2d 517, 521; State v. Bell, 566 So.2d 959, 960 (La. 1990).
A determination of whether there is sufficient "possession" of a drug to convict depends on the particular facts of each case. State v. Major, 03-3522, p. 7 (La.12/1/04), 888 So.2d 798, 802; State v. Trahan, 425 So.2d 1222, 1226. Mere presence in an area where drugs are located or mere association with one possessing drugs does not constitute constructive possession. There are several factors to consider in determining whether a defendant exercised sufficient control and dominion to establish constructive possession, including: (1) his knowledge that drugs were in the area; (2) his relationship with the person, if any, found to be in actual possession; (3) his access to the area where the drugs were found; (4) evidence of recent drug consumption; and (5) his physical proximity to the drugs. Major, 03-352 at 7-8, 888 So.2d at 802; State v. Toups, 01-1875, p. 4, (La.10/15/02), 833 So.2d 910, 913.
Guilty knowledge may be inferred from the circumstances of the case. Pigford, 05-0477 at 7, 922 So.2d at 521; State v. Major, 03-3522 p. 8-9 (La.12/1/04), 888 So.2d 798, 803; State v. Goiner, 410 So.2d 1085, 1087 (La.1982). Guilty knowledge is also an element of the crime of possession of a firearm by a person convicted of a felony. State v. Bush, 02-0247 (La.App. 5 Cir. 6/26/02), 822 So.2d 859, writ denied, 02-1887 (La.1/24/03), 836 So.2d 42; State v. Evans, 29,675, 29,676 (La.App. 2 Cir. 9/24/97), 700 So.2d 1039, rehearing denied, writ denied, 97-2942 (La.1/9/98), 705 So.2d 1121; State v. Woods, 94-2650 (La.App. 4 Cir. 4/20/95), 654 So.2d 809, writ denied, 95-1252 (La.6/30/95), 657 So.2d 1035.
In the present case, the specific issue raised by the Defendant is whether the State proved that he knowingly possessed the firearm and the cocaine, either through actual possession or through constructive possession. Since the Defendant stipulated to the fact that he was a convicted felon and that his conviction was within the ten-year period, the State only needed to prove possession and intent at trial.
The State proved through the testimony of law enforcement officers that the Defendant had constructive possession of the firearm and the cocaine. Officer Prudhomme and Agents O'Brien and Polson all testified that the Defendant admitted that only he owned the guns and drugs found in the apartment. Agent Polson testified that the Defendant stated that no one else in the apartment even knew that the guns and drugs were there.
Further, Agent Weidenhaft testified that he found the Defendant alone in the loft. The Defendant was lying on the only mattress in the loft. Officer Prudhomme testified that she only saw the Defendant and Agent Weidenhaft exit the loft. Officer Prudhomme also testified that she subsequently found one of the guns under the mattress in the loft where the Defendant *799 was found. The Defendant told Officer Prudhomme that he had slept in the loft since he moved into the apartment. In addition, even though Jessie Reed claimed ownership of the guns, this would not have prevented the Defendant from having temporary and shared dominion over the guns, which would still constitute constructive possession. Jessie Reed admitted in his testimony that he did not know if the Defendant knew that there were guns in the apartment.
The cocaine was found in the Defendant's residence in a bedroom to which he had access. Officer Prudhomme testified that the Defendant admitted that he moved into the apartment and stayed in the loft two weeks before the search. Agent Polson testified that the cocaine was found in the master bedroom. The stairwell to the loft where the Defendant slept was located in the corner of that bedroom.
Jessie Reed testified that he did not hear the Defendant make the statements claiming ownership of the firearms and the drugs. Jessie Reed admitted, however, that he did not know anything about the drugs found in the apartment including whether the Defendant brought them to the apartment. Also, Officer Prudhomme testified that Jessie Reed was sitting next to the Defendant when he made the statements and two probation officers testified that they also heard the Defendant make them.
Whether a defendant possessed the requisite intent in a criminal case is a determination for the trier of fact. It is not the function of the appellate court to second-guess the credibility of witnesses as determined by the trier of fact or to reweigh the evidence absent impingement on the fundamental protection of due process of law. State ex rel. Graffagnino v. King, 436 So.2d 559, 563 (La.1983); State v. King, 06-554, p. 9 (La.App. 5 Cir. 1/16/07), 951 So.2d 384, 391, writ denied, 07-0371 (La.5/4/07), 956 So.2d 600.
Thus, considering the foregoing, we find that the Defendant's admission to ownership of the firearms and cocaine found in his residence, coupled with the other evidence, was sufficient evidence for a rational trier of fact to find proof beyond a reasonable doubt that Defendant possessed a firearm and cocaine, and, therefore, there was sufficient evidence to support the Defendant's convictions.
This assignment of error lacks merit.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Upon review, we find that the Defendant was not advised of the prescriptive period for filing for post-conviction relief, as required by La.C.Cr.P. art. 930.8.[4] Therefore, we must remand the case to the trial court with instructions to send appropriate written notice to the Defendant within ten days of the rendition of this opinion of the correct statement of the law regarding the prescriptive period for post conviction relief and to file written proof in the record that the Defendant received the notice. State v. Williams, 05-0673, p. 17 (La.App. 5 Cir. 3/14/06), 926 So.2d 665, 676.
*800 Accordingly, for the reasons set out above, the Defendant's convictions for possession of a firearm by a convicted felon and possession of cocaine and his sentences, respectively, to 15 years at hard labor, without benefit of parole probation or suspension and a $5,000.00 fine, and three and one half years at hard labor, to be served consecutively, are affirmed. The case is remanded to the district court to provide proof in the record of the Defendant's receipt of appropriate notice, under La.C.Cr.P. art. 930.8, of the prescriptive period for post conviction relief.
AFFIRMED AND REMANDED.
NOTES
[1] Both the State and defense briefs refer to Jessie Reed as a female. However, the officers' testimony and Jessie Reed's affidavit refer to Jessie Reed as a male. A review of the video of the search (State's Exhibit 1) shows that Jessie Reed is a male.
[2] Tyrone Reed will be referred to as "Reed" throughout this opinion. According to Agent O'Brien, Reed was on parole for armed robbery.
[3] The Defendant was previously convicted of attempted possession with intent to distribute cocaine.
[4] The commitment/minute entry indicates that the Defendant was informed that he had "two (2) years after judgement [sic] of conviction and sentence has become final to seek post-conviction relief." However, the transcript of the Defendant's sentencing hearing indicates that the Defendant was not so informed. Where there is a discrepancy between the commitment/minute entry and the sentencing transcript the transcript governs. See State v. Lynch, 441 So.2d 732, 734 (La. 1983).