456 So.2d 1383 (1984)
STATE of Louisiana
v.
Walden SCOTT.
No. 84-K-1052.
Supreme Court of Louisiana.
October 15, 1984.
*1384 George E. Escher, Katner & Escher, New Orleans, for defendant-applicant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., William Credo, III, Cornelius Regan, Elizabeth M. Gaudin, Asst. Dist. Attys., for respondent.
WATSON, Justice.
Defendant, Walden Scott, was convicted in a bench trial of intentionally obtaining a controlled dangerous substance, Oxycodone,[1] by fraud and deceit. LSA-R.S. 40:971 B(1)(b).[2] Scott was given a two year suspended sentence and placed on two years probation. The Court of Appeal affirmed,[3] and a writ was granted.[4] Scott contends that there was insufficient evidence of his intent to commit the offense.

FACTS
On September 13, 1982, Scott entered a K-Mart Pharmacy on Veterans Highway in Metairie, Louisiana, and gave the pharmacist a Percodan prescription for a "James Wilson". The pharmacist called Dr. Bullard, the prescribing doctor, for verification and was told Dr. Bullard did not have a patient by that name. The doctor's office notified the police that someone was attempting to pass a forged prescription.
Two narcotics agents from the Jefferson Parish Sheriff's Department went to the pharmacy and witnessed the purchase. When the agents asked defendant about the prescription, Scott said he was picking it up for a friend and was placed under arrest.
At trial, the only testimony was that of Raymond Gibbs, one of the arresting officers, who said Scott was cooperative "[t]o a degree" (Tr. 50) Gibbs did not know whether Wilson existed or where he could be located. It was stipulated that Dr. Bullard would have testified that neither James Wilson nor Walden Scott was one of his patients, and he "didn't write this prescription." (Tr. 46)) It was also stipulated that *1385 the pharmacist received the prescription from Scott, filled it and gave it to Scott.[5]

LAW
The question is "`whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' (Jackson v. Virginia, 443 U.S. 307 at 319, 99 S.Ct. 2781 at 2789, 61 L.Ed.2d 560 at 573 [1979], which is the federal or constitutional standard); and, since this is a circumstantial evidence case, whether, assuming every fact to be proved that the evidence tends to prove, every reasonable hypothesis of innocence is excluded (LSA-R.S. 15:438, the state or statutory standard)." State v. Parker, 425 So.2d 683 at 694 (La., 1982).

CONCLUSION
All that was proven was that Scott handed the pharmacist a forged prescription made out to another person and obtained a controlled dangerous substance. There was no evidence that Scott misrepresented himself as Wilson; that Scott forged the prescription; or that Scott had knowledge the prescription was forged. See State v. Goiner, 410 So.2d 1085 (La., 1982) and State v. Brown, 352 So.2d 690 (La., 1977). The state did not show that Scott knowingly obtained the Percodan "by misrepresentation, fraud, forgery, deception or subterfuge" as required by the statute. State v. Tufts, 391 So.2d 1114 (La., 1980).
In State v. Mitchell, 421 So.2d 851 (La., 1982), a similar case, the conviction under LSA-R.S. 40:971 B(1)(b) was affirmed, but that defendant admitted being addicted to codeine, an ingredient in the drug for which the forged prescription was written. It was held that a rational trier of fact could have reasonably inferred that the addict knowingly used a forged prescription.
In State v. Custard, 384 So.2d 428 (La., 1980), there was also evidence of defendant's guilty knowledge. While standing in a checkout line with the unfilled prescription in his hand, defendant saw the police arrive and passed the prescription to a friend who worked in the store. Defendant's guilty reaction allowed an inference that he knowingly used a forged prescription to obtain a controlled dangerous substance.
Here, the state proved that Scott obtained possession of a controlled dangerous substance by means of a forged prescription, but failed to prove an essential element of the crime, knowledge. There was absolutely no evidence from which it could be inferred that Scott had knowledge that the prescription was forged. The law requires reversal.
For the foregoing reasons, the conviction and sentence of defendant, Walden Scott, are reversed and vacated. A judgment of acquittal is entered.
REVERSED.
MARCUS, J., concurs and assigns reasons.
MARCUS, Justice (concurring).
Agreeing with the majority that the state presented insufficient evidence that Scott had knowledge that the prescription was forged, I concur in the result. However, had the defendant been charged with possession of a controlled dangerous substance, I consider that it would have been a matter of defense whether the substance was obtained pursuant to a valid prescription. See my dissent in State v. Goiner, 410 So.2d 1085 (La.1982).
NOTES
[1] LSA-R.S. 40:964 [Schedule II, A(1)(o)]. It is commonly known as Percodan.
[2] LSA-R.S. 40:971 B(1)(b) provides in pertinent part:

"B. (1) It shall be unlawful for any person knowingly or intentionally:
* * * * * *
"(b) To acquire or obtain possession of a controlled dangerous substance by misrepresentation, fraud, forgery, deception or subterfuge;..."
[3] State v. Scott, 451 So.2d 1135 (La.App. 5 Cir. 1984).
[4] 452 So.2d 1175 (La., 1984).
[5] According to the laboratory report, the tablets were consistent in appearance with Percodan and contained Oxycodone.