SEXTON, Judge.
The defendant was charged by bill of information with two counts of attempting to obtain a controlled dangerous substance, Preludin, by fraud. Subsequent to a jury trial, the defendant was acquitted on count one and was found guilty on count two. On October 28, 1983, the defendant was sentenced to two and one-half years at hard labor to run consecutively with any other sentence which the defendant might be serving. The defendant appeals this conviction and sentence contending that there was insufficient evidence to sustain his conviction, and that the sentence imposed is excessive. Finding merit in the defendant’s first assignment, we reverse and pretermit assignment number two.
On February 10, 1981, while in the custody of the Ruston Police Department for another offense, the defendant was taken to the offices of Dr. Alan Herbert in Ru-ston complaining of headaches. While waiting to be examined, the defendant was alone in one of the examining rooms which contained blank prescription pads. After the examination of the defendant, Dr. Her *1196 bert issued a prescription to the defendant for the drug Flexeril and the defendant departed.
On February 13, 1981, a man entered Brazzel’s Pharmacy in Ruston and presented a prescription for Preludin.[1] The prescription contained the name of Dr. Herbert and was for thirty tablets. The pharmacist, Mr. Brazzel, refused to fill this prescription because he felt the signature of the doctor was a forgery. However, Mr. Brazzel made a photocopy of the prescription and the defendant left without further incident. Mr. Brazzel notified the police.
Later that same day, February 13, 1981, a single male entered Cale’s Pharmacy in Ruston and presented a prescription for thirty tablets of Preludin. The pharmacist, Michelle Cale, believed the signature of Dr. Herbert on the prescription to be a forgery and declined to fill the prescription. At that point, the person left and Ms. Cale notified the police of the incident. Cale’s Pharmacy is located directly across the street from Dr. Herbert’s office and Dr. Herbert’s nurse, Dede Cantrell, witnessed the person in Cale’s Pharmacy and identified him as Lawrence Wade.
In defendant’s original assignment of error in which we find merit, the defendant contends that when viewed in the light most favorable to the prosecution, the evidence is insufficient for a rational trier of fact to conclude that the essential elements of the offense were proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The statute the defendant was convicted of violating, LSA-R.S. 40:971 B(l)(b), states:
B. (1) It shall be unlawful for any person knowingly or intentionally:

(b) to acquire or obtain possession of a controlled dangerous substance by misrepresentation, fraud, forgery, deception or subterfuge....
Thus, the state must show that the defendant was the man who presented the prescription, that the prescription was fraudulent and that the defendant knew that the prescription was fraudulent.
In order to review this assignment, it will be necessary to summarize the pertinent evidence in some detail. Dr. Alan Herbert testified that his records revealed that he did treat the defendant and that the signature on the prescription which Mr. Brazzel copied was not his. The doctor further testified that he could not state whether or not he had ever treated a Joe Ann White, the name on the prescription which was copied by Mr. Brazzel.
The state’s next witness was Ms. Dede Cantrell, Dr. Herbert’s nurse and lab technician. Ms. Cantrell testified that she saw the defendant in Dr. Herbert’s office on February 10, 1981, when he was given tablets of the muscle relaxer, Flexeril. He was not given a prescription for Preludin. Ms. Cantrell stated that anyone left in an examining room of the office had access to blank prescription pads. Ms. Cantrell also testified that she was not sure if she knew Joe Ann White.
Ms. Cantrell confirmed that the signature on S-l was not that of Dr. Herbert. Ms. Cantrell also testified that the defendant came to the doctor’s office on February 13th seeking a refill of the prescription for Flexiril. Ms. Cantrell stated that this could not be given to the defendant because the doctor was out of town, and that the defendant left in a black and red sports car. Ms. Cantrell further stated that she saw the defendant at Cale’s Pharmacy across the street at approximately four o’clock p.m., two hours after the defendant had sought the prescription refill from Dr. Herbert’s office. She further testified that Dr. Herbert usually prescribed only seven or fourteen tablets of Preludin and that she *1197 had never seen him prescribe as many as thirty. Finally, Ms. Cantrell testified that there was a woman in the defendant’s car when the defendant came to Dr. Herbert’s office and when he went to Cale’s Pharmacy. Ms. Cantrell stated that she could not identify the woman.
The next witness called for the state was Albert Brazzel, the pharmacist who reported the incident which led to the first count being brought against the defendant. Mr. Brazzel could not identify the defendant as the person who brought in the prescription. Mr. Brazzel testified that the signature on S-l was not, in his opinion, that of Dr. Herbert. Mr. Brazzel testified that Dr. Herbert’s prescriptions for Preludin are either for seven or fourteen tablets and that he has never known Dr. Herbert to prescribe thirty.
The state then called Michelle Cale, the pharmacist who reported the incident which led to the second count against the defendant. Ms. Cale adamantly testified that the defendant brought in a forged prescription for Preludin. She stated that she was of the belief the prescription was forged because the signature was not that of Dr. Herbert, for whom she had been filling prescriptions regularly for three years. She also stated that she did not “think” that she had ever seen a prescription from Dr. Herbert for as many as thirty tablets of Preludin. She stated that when she refused to fill the prescription, she gave the prescription back to the defendant. She stated he “kinda hurried” to a black and red sports car containing a woman and left.
Ms. Cale stated that she was “about 99.9% sure” that the defendant was the man who brought in the prescription in question. She also stated that she did not remember who the prescription was for, only that it was in a woman’s name and not the defendant’s name. Ms. Cale was not shown S-l, the prescription copied by Mr. Brazzel, and thus she did not testify as to whether that prescription was the same one she received from the defendant.
Sue Harrington, an employee of Braz-zel’s Pharmacy, also testified. She stated she was on duty when the incident occurred, and she received the prescription from the lone male. However, she could not identify the defendant as that person.
In brief summary, the state showed that the defendant had the opportunity to obtain one of Dr. Herbert’s blank prescription forms. It also showed that an unknown person attempted to have a forged prescription made out to Joe Ann White and purportedly signed by Dr. Herbert filled at Brazzel’s Pharmacy on February 13th. It also showed that the defendant presented a prescription purportedly signed by Dr. Herbert to Cale’s Pharmacy on the same date apparently made out -to a woman. The pharmacist was certain that the prescription was a forgery, but the prescription was not retained. The defendant hurried from Cale’s Pharmacy to a car with an unknown female in it.
We are satisfied from this evidence that the defendant presented a forged prescription to Cale’s Pharmacy. However, we are unable to distinguish the circumstances of this case from State v. Scott, 456 So.2d 1383 (La.1984), and must determine that the state has not sufficiently shown that the defendant was aware that the prescription was fraudulent.
In Scott, the defendant, Walden Scott, gave a pharmacist a prescription made to a “James Wilson.” The pharmacist called the prescribing doctor and was told that he did not have a patient by that name. The doctor then notified the police. Two narcotics agents then went to the pharmacy and witnessed the defendant purchase the CDS. They then arrested the defendant. Scott told the police that he was picking the prescription up for a friend. At trial, there was no evidence of whether Wilson existed or where he could be located. It was stipulated that the prescribing doctor would have testified that neither James Wilson nor Walden Scott was one of his patients and that he “didn’t write this prescription.”
The Supreme Court stated that all that was proven was that Scott handed the *1198 pharmacist a forged prescription made out to another person and obtained a CDS. There was no evidence that Scott misrepresented himself as Wilson, that Scott forged the prescription, or that Scott had knowledge that the prescription was forged. The court held that the state did not show that Scott knowingly obtained the CDS “by misrepresentation, fraud, forgery, deception or subterfuge” as required by statute.
Our Supreme Court has decreed that there must be some positive evidence of the defendant’s knowledge that a prescription is forged when a defendant presents a prescription made out to another person. We are obligated to follow that pronouncement.
Thus, in the light of Scott, we determine that the only thing the state has proven with respect to this defendant’s intent is that he handed Ms. Cale a forged prescription apparently made for another person. There being no additional evidence of the defendant’s intent other than the fact the defendant “kinda hurried” to get in his automobile, we reverse the defendant’s conviction and sentence and order that he be discharged on this bill of information.
REVERSED.

. Apparently, the defendant made bond subsequent to his visit to Dr. Herbert’s office on February 10th and prior to February 13th. The fact that the defendant was in police custody at the time he visited the doctor was kept from the jury at the request of the defense. There is no contention by the defense at any point in this case that the defendant could not have committed these offenses because he was in police custody.