477 So.2d 771 (1985)
STATE of Louisiana
v.
Charles LEASON.
No. 85KA0165.
Court of Appeal of Louisiana, First Circuit.
October 8, 1985.
*773 Bryan Bush, Dist. Atty., by Brett Grayson, Asst. Dist. Atty., Baton Rouge, for plaintiff-appellee.
Robert J. Roux, Baton Rouge, for defendant-appellant.
Before CARTER, SAVOIE and ALFORD, JJ.
SAVOIE, Judge.
Defendant, Charles Leason, was charged by bill of informtion[1] with the *774 following offenses: Count I, armed robbery, a violation of La.R.S. 14:64; Count II, attempted armed robbery, a violation of La.R.S. 14:27 and 64; and Count III, attempted first degree murder, a violation of La.R.S. 14:27 and 30. He pled not guilty and not guilty by reason of insanity to each count. At a sanity hearing held in March, 1981, defendant was found to lack capacity to proceed and was transferred to the Feliciana Forensic Facility until deemed capable of proceeding. In August, 1983, a second sanity hearing was held at which defendant was found capable of proceeding.
Defendant was tried by jury in May, 1984. He was found guilty as charged on Counts I and II; and on Count III he was found guilty of attempted manslaughter, a responsive verdict. Defendant was sentenced to serve concurrent sentences of ninety-nine years and forty-nine and one-half years on Counts I and II, respectively, both at hard labor without benefit of probation, parole or suspension of sentence, and ten years at hard labor on Count III. Because the defendant used a firearm in the commission of the attempted manslaughter, he also received on Count III, pursuant to La.R.S. 14:95.2, an additional sentence of two years at hard labor, without benefit of probation, parole or suspension of sentence to be served consecutively to his other sentences.
The instant offenses all occurred on the night of December 3, 1980, in Baton Rouge. A black man dressed with his shirt outside of his pants entered the 7-Eleven store on Nicholson Drive. After he ordered everyone to the back of the store, he raised his shirt to reveal a gun shoved down in his belt. Everyone moved to the back of the store where the man asked each person for their money. A male victim, Mr. A, told the man he only had two or three dollars. The man did not take anything from Mr. A and left the store shortly thereafter.
Mr. A testified that he saw the butt of the gun and the rear portion of the cylinder when the man raised his shirt. Being very familiar with guns, Mr. A testified that he was positive then and at trial that the gun was a .357 magnum revolver. He could not identify defendant as the man who committed the offense, but did identify the gun (which was a .357 magnum revolver) found in the apartment where defendant was apprehended as having the same type butt as the one displayed at the store.
A female victim, Miss B, testified that, on the night in question, she was alone at a friend's apartment on West Garfield Street. At about 9:00 p.m., she heard a knock at the door and opened the door thinking it was a friend. When she opened the door, a black man wearing a red bandanna around his face pushed the door open and came in. He was wearing a gold shirt and beige with brown plaid pants. He held a gun on her and asked if anyone else was there. She told him no one else was there. He took her from room to room and he turned on the lights to make sure no one was there and then turned them off. When they got into the bedroom, he told Miss B to get on the bed, which she did. When told to take off her clothes, she refused, telling him she would get sick. Miss B heard him unzip his pants. She testified that he said something about money at which point she looked for some money to give him. While trying to find money, she turned on the light in the living room where the two of them were at that time. At this point, the man's bandanna was down. He told her to turn the light off and not to look at his face. She, however, did get a look at his face. In addition to the money, he took a silver ten speed bicycle that belonged to her friend and which was inside the apartment. The man remained inside the apartment for about twenty minutes, holding the gun in his hand the entire time.
After he left the apartment with the bicycle, Miss B locked the door, looked out a window and saw him riding east on West Garfield Street. She called the police and *775 reported the incident. About forty-five minutes after the incident, the police brought defendant to Miss B for identification. She remembered his face and his clothes and positively identified defendant as the man who robbed her. She also made a positive in-court identification of defendant as the robber.
Sergeant F.W. Fuentes, II, of the Baton Rouge Police Department testified that he was on patrol in south Baton Rouge on the night of December 3, 1980, when he received a call on his police radio concerning an armed robbery committed at the 7-Eleven store on Nicholson Drive. As he proceeded in that direction, the suspect was described as a black man wearing a pair of plaid pants with a red bandanna around his neck riding a bicycle. Fuentes was traveling west on West McKinley Street when he observed a black male on a bicycle matching the suspect's description heading toward him. The man saw Sergeant Fuentes and fled. Fuentes followed him in his car. The man turned right on Alaska Street, where he started going up the stairs of an apartment complex. As Sergeant Fuentes was parking and getting out of his car the man turned, pointed his gun at the officer, and fired a shot at him. As soon as the man fired the shot, he took a few steps and rounded the corner. Sergeant Fuentes saw him just as he was starting to go into an apartment. Fuentes watched the door to the apartment until other officers arrived. After the officers entered the apartment, Sergeant Fuentes noticed what looked like the plaid pants the man had been wearing sticking out of a drawer. The officers opened the drawer and inside found the pants, shirt, red bandanna, a $2 bill that was bait money from the 7-Eleven store, some other money, and a .357 magnum revolver. Four bullets were found inside the gun along with one spent shell. The sergeant and the other officers opened the door to a closet and found the man inside, dressed in his underwear. They arrested him and advised him of his constitutional rights. Sergeant Fuentes made a positive in-court identification of defendant as being the same man riding the bicycle who was eventually found in the closet.
The defense called Drs. Hypolite Landry, Francisco A. Silva, and George A. Bishop to the stand. Each doctor testified to the effect that he could not state whether or not defendant could distinguish between right and wrong on the date of the offenses.
Dr. Landry testified that on December 10, 1980, he interviewed defendant and found him well oriented as to time, situation, and place, i.e., on that date defendant knew where he was, why and so forth. Dr. Landry, who had seen defendant on numerous occasions, testified that at times defendant is psychotic, induced by drug and alcohol abuse. Dr. Silva, who also had seen defendant numerous times, testified that he had seen defendant when defendant was psychotic and paranoid but could still distinguish right from wrong. On only one occasion in 1976 did Dr. Silva feel that defendant was perhaps unable to understand right from wrong.

ASSIGNMENTS OF ERROR
Defendant on appeal alleges that the trial court erred when it:
1. ruled defendant was competent to assist his counsel in the presentation of his defense;
2. overruled defense counsel's objection to lay testimony;
3. denied defendant's motion for a mistrial;
4. overruled defendant's objection to the state's exhibit S-6 being introduced in evidence;
5. denied defendant's motion for post verdict judgment of acquittal; and
6. imposed an excessive sentence.
Assignments of error two and four were not briefed by defendant, and are, therefore, considered abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4; State v. Benton, 453 So.2d 993 (La.App.1st Cir.), writ denied, 457 So.2d 17 (La.1984).

*776 1.
By means of this assignment, defendant contends that the trial court erred when it found him competent to assist his counsel in the presentation of his defense.
Defendant initially filed a motion raising the question of his mental capacity to proceed. A sanity commission was appointed and a sanity hearing was held. The district court found defendant lacking capacity to proceed in March, 1981, and transferred him to the Feliciana Forensic Facility until being deemed capable of proceeding. In August, 1983, a second sanity hearing was conducted; and the district court found defendant had regained his capacity to proceed and ordered that proceedings resume. In March, 1984, prior to trial, defendant moved for another sanity hearing, which motion following argument thereon was denied by the trial court.
At both the first and second sanity hearings the only evidence introduced consisted of reports of the examining physicians, Drs. Hypolite Landry and F.A. Silva, who constituted the sanity commission for each hearing. Dr. Landry's report submitted at the second hearing clearly and unequivocally stated that defendant understood the nature of the charges against him and was able to assist in his defense. Dr. Silva stated defendant was aware of the charges facing him as well as the possible consequences of being found guilty of those charges. Defendant had been able to discuss the case with his attorney. While Dr. Silva found it difficult to give an opinion concerning defendant's ability to assist counsel, he did state that defendant's paranoia could very well interfere with his ability to discuss the case with his lawyer and his ability to testify in his own defense.
Mental incapacity to proceed is defined in La.C.Cr.P. art. 641 as follows:
Mental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense.
The twofold test of mental capacity to stand trial under this article is: (1) whether the accused fully understands the consequences of the proceedings; and, (2) whether he has the ability to assist in his defense by consultation with counsel. State v. Williams, 381 So.2d 439 (La.1980). The law presumes the defendant's sanity. La.R.S. 15:432. The defendant bears the burden of establishing by a clear preponderance of the evidence that, as a result of his mental infirmity, he is incompetent to proceed to trial. State v. Charles, 450 So.2d 1287 (La.1984). The ruling of a district court on a defendant's mental capacity to proceed is entitled to great weight on appellate review and will not be overturned absent an abuse of discretion. State v. Brogdon, 426 So.2d 158 (La.1983) cert. denied, ___ U.S. ___, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985); State v. Dorsey, 447 So.2d 636 (La.App.1st Cir.1984). Defendant presented no other evidence at the sanity hearing. After reading the doctor's reports, the trial judge determined that defendant had the capacity to stand trial. The trial judge did not abuse his discretion in finding the defendant mentally competent at the time of trial.
Defendant argues in the instant case that the record is devoid of any consideration by the district court of the guidelines set forth in State v. Narcisse, 426 So.2d 118 (La.1983), cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983), and that the record does not indicate whether the district court's determination of defendant's mental capacity was an independent one or one based solely upon Dr. Landry's recommendation. Defendant's argument is without merit. There is no requirement that the court state for the record that it utilized the guidelines in Narcisse at the time it makes its determination of mental capacity. The purpose of the guidelines set forth in Narcisse is to assist the court in its determination of a defendant's capacity to stand trial. Moreover, the issue of a defendant's mental capacity to proceed is determined by the court. See La.C.Cr.P. art. 647; State v. Coco, 371 So.2d 803 (La.1979).
*777 Based upon our review of the record, we find that the district court's August, 1983, ruling that defendant possessed mental capacity to proceed is amply supported by the record. There was conflicting medical testimony. The district court's determination of the defendant's capacity to stand trial did not constitute an abuse of discretion. Moreover, the record does not indicate and defendant does not argue that any reasonable ground was presented to the trial court to doubt his mental capacity to proceed in March, 1984, when defendant's motion for a third sanity hearing was denied. Under such circumstances the trial court's ruling was correct. See La.C.Cr.P. art. 643; State v. Charles, supra.
This assignment lacks merit.

3.
By this assignment, defendant contends that the trial court erred when it denied defendant's motion for a mistrial, after Sergeant Fuentes testified as to other crimes not admissible in the instant case.
The pertinent testimony to other crimes not admissible relates to Sergeant Fuentes' reference on direct examination to "bait money from the 7-Eleven store". Defendant moved for a mistrial.
Prior to the elicitation of Sergeant Fuentes' testimony referring to the "bait money from the 7-Eleven store", the officer had given testimony that he had received a call over his police radio to investigate an armed robbery at the 7-Eleven store on Nicholson Drive and had been given a description of the "armed robberuhthe armed robbery suspect." As previously stated herein, the officer, in response to the call to investigate the robbery, proceeded in the direction of the 7-Eleven store. While en route to the store, he noticed defendant who fit the description of the armed robber. He then began his pursuit of defendant which culminated in defendant's apprehension.
The trial court ruled that the officer's reference to the bait money did not create prejudice against defendant in the minds of the jury. The trial court concluded that an admonition would be more harmful than beneficial. Since Sergeant Fuentes was not a court official, La.C.Cr.P. art. 771 rather than art. 770 is applicable. Under 771, the trial court may grant a mistrial if the defendant cannot receive a fair trial after the jury heard the remark in question. The trial court determined that the remark did not prejudice the defendant and refused to grant a mistrial. Defense counsel objected to the refusal to grant a mistrial and assigned error.
Defendant argues on appeal that the state had deleted from the bill of information the charge of armed robbery of the 7-Eleven, and instead defendant was charged with attempted armed robbery based on his request to Mr. A for his money. Therefore, defendant concludes that the officer's testimony as to finding the bait money from the 7-Eleven constituted a direct reference to another crime committed by defendant which was not admissible. Defendant further argues that, by failing to admonish the jury or to grant a mistrial, the trial court denied him his constitutional right to a fair trial.
The prohibition against references to inadmissible evidence of other crimes under La.C.Cr.P. art. 770 does not include evidence which forms a part of the res gestae. See State v. Jackson, 450 So.2d 1053 (La.App.1st Cir.1984).
What forms part of the res gestae is always admissible in evidence. La. R.S. 15:447. To constitute res gestae, the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction. La.R.S. 15:448. In Louisiana, the res gestae doctrine is broad and includes not only spontaneous utterances and declarations made before or after commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed before, during or after commission of the crime, if the continuous chain of events is evident under the circumstances. State v. Washington, 444 So.2d *778 320 (La.App.1st Cir.1983), writ denied, 445 So.2d 450 (La.1984).
In light of the foregoing factual setting and after careful review of the record, we find that Sergeant Fuentes' testimony referring to the bait money from the 7-Eleven store comes within the purview of res gestae. The mere deletion by the district attorney of the charge of armed robbery of the 7-Eleven store from the bill of information does not insulate defendant from the events which formed the basis of the deleted charge which were part of one continuous transaction, including the attempted armed robbery of Mr. A, therefore, such constitutes res gestae. Accordingly, the officer's testimony referring to the bait money from the 7-Eleven store is not included within the remarks or comments prohibited by La.C.Cr.P. art. 771(2). Cf. State v. Jackson, supra.
We also note that defense counsel neither requested an admonition to the jury nor objected to the trial court's failure to admonish the jury.
This assignment lacks merit.

5.
By means of this assignment of error, defendant argues that the trial court erred by denying his motion for post verdict judgment of acquittal regarding his conviction on Count II, the attempted armed robbery of Mr. A. Defendant contends that the evidence was insufficient to convict him on Count II because the state failed to prove beyond a reasonable doubt that he is the man who attempted to rob Mr. A.
The applicable standard for reviewing sufficiency of evidence is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the essential elements of the crime were proven beyond a reasonable doubt. La.C.Cr.P. art. 821; State v. Korman, 439 So.2d 1099 (La. App.1st Cir.1983).
The statutory rule as to circumstantial evidence is that assuming every fact proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. La.R.S. 15:438. Exclusion of every reasonable hypothesis of innocence is therefore a component of the more comprehensive reasonable doubt standard, where circumstantial evidence is used to convict. State v. Nealy, 450 So.2d 634 (La.1984).
Although Mr. A could not identify defendant as the robber, he did describe the pants worn by the robber which description matched the pants worn by defendant when observed by Fuentes and later recovered when defendant was apprehended. Mr. A also identified the .357 magnum revolver recovered when defendant was apprehended as having the same type butt as the .357 carried by the robber. Mr. A testified that the gun was shoved down in the left side of the man's belt. Sergeant Fuentes was fired upon by defendant who held the gun in his left hand.
On Count II, the attempted armed robbery of Mr. A, applying the statutory rule as to circumstantial evidence as a component of the more comprehensive reasonable doubt standard, we find that the record supports the trier of fact's finding of guilty of the offense.
This assignment lacks merit.

6.
By means of this assigned error, defendant asserts that the trial court imposed an excessive sentence when it sentenced him to the maximum sentence permitted by law.
Article I, § 20 of the Louisiana Constitution prohibits the imposition of excessive punishment. Generally, a sentence is considered excessive if it is grossly disproportionate to the severity of the crime, or is nothing more than the needless imposition of pain and suffering. (Citations omitted). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it is so disproportionate as to shock the sense of justice. State v. Reed, 409 *779 So.2d 266 (La.1982); State v. Edwards, 432 So.2d 318 (La.App.1st Cir.1983).
In State v. Benton, 453 So.2d 993 (La.App.1st Cir.), writ denied, 457 So.2d 17 (La.1984), we noted that La.C. Cr.P. art. 894.1 requires the trial court to state for the record the considerations and factual basis for imposing the given sentence. However, it need not articulate every aggravating and mitigating circumstance. The record need only reflect that the trial judge adequately considered the guidelines given in this article. State v. Parish, 429 So.2d 442 (La.1983).
A trial judge's reasons in imposing sentence, as required by La.C.Cr.P. art. 894.1, are an important aid to this Court when reviewing a sentence alleged to be excessive. State v. Wade, 442 So.2d 681 (la. App.1st Cir.1983), writ denied, 444 So.2d 1245 (La.1984).
In cases involving the most serious violations of the described offense, and the worst kind of offender, maximum sentences are appropriately imposed. State v. Jones, 398 So.2d 1049 (La.1981); State v. Lang, 430 So.2d 1239 (La.App.1st Cir.1983).
Defendant received the maximum sentence for his convictions on Count I, armed robbery, and Count II, attempted armed robbery to run concurrently. On Count III, attempted manslaughter, he received a ten year sentence at hard labor to be served concurrent to his sentences on Counts I and II. Additionally, on Count III he received a two year consecutive sentence under La.R.S. 14:95.2 to be served without benefit of probation, parole or suspension of sentence.[2]
In sentencing defendant, the trial court noted defendant's extensive arrest record which included arrests for simple rape, armed robbery, aggravated kidnapping, and aggravated arson. The trial court also stated that defendant had a prior conviction for simple assault. In regard to a charge of felony theft, defendant had been placed on two years' active, supervised probation and had been arrested for shoplifting during that probation. Defendant had also been committed to East Louisiana State Hospital because an indefinite probation had been terminated unsatisfactorily.
The court noted that in the instant case defendant had been arrested and charged with two counts of armed robbery, two counts of attempted armed robbery, one count of attempted aggravated rape and one count of attempted first degree murder.[3] The trial court also noted that in Count I the victim's residence was forcibly entered and an armed robbery occurred. In Count III a police officer was shot at and could have been killed.
The trial court, in its reasons for sentencing, stated that defendant's extensive criminal background, particularly for crimes of a violent nature, indicated that there was an undue risk that he would commit another crime in the near future if he was not incarcerated. The trial court further stated that any lesser sentence would deprecate the seriousness of the offenses and that defendant is in need of correctional treatment which can only be given through a custodial environment at an institution appropriate to handle that type of individual.
In light of the circumstances, this sentence is neither grossly disproportionate to the severity of the crimes nor a needless imposition of pain and suffering. Therefore, it is not excessive and is within the discretion of the court.
This assignment lacks merit.
For the foregoing reasons, the conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The bill of information was amended subsequent to arraignment, making slight changes in the dates of the offenses for Counts I and III. Although defendant was not re-arraigned thereafter, we find no error. See State v. Bluain, 315 So.2d 749 (La.1975); State v. Gaines, 452 So.2d 239 (La.App.1st Cir.1984), sentence set aside, 455 So.2d 1179 (La.1984).
[2] We note that the trial court failed to impose the sentence subject to the condition of La.R.S. 14:95.2 that defendant be denied credit for good time. "An appellate court under such circumstances should disregard sentencing errors favorable to the defendant unless the prosecution has raised the issue in the trial court and has sought appellate review." State v. Jackson, 452 So.2d 682 (La.1984).
[3] While defendant was originally charged with six offenses, the State nolle prossed three other counts.