498 So.2d 196 (1986)
STATE of Louisiana
v.
Eldon P. BURGE.
No. KA 86 0569.
Court of Appeal of Louisiana, First Circuit.
November 12, 1986.
*199 William R. Campbell, Jr., New Orleans, for appellee.
Jerry Schwehm, Slidell, for appellant.
Before SAVOIE, CRAIN and JOHN S. COVINGTON, JJ.
JOHN S. COVINGTON, Judge.
Defendant, Eldon Preston Burge, was charged by bill of information with attempted possession of a controlled dangerous substance (valium) by means of fraud, in violation of La.R.S. 40:971 and 979. Defendant was tried by jury and convicted as charged. He was sentenced to serve two and one-half years imprisonment at hard labor. He has appealed, urging eight assignments of error, to wit:
1. The district court erred by compelling defendant to sit next to counsel during hearing on defendant's motion to suppress his identification.
2. The district court erred by not suppressing the identifications of defendant, which resulted from the use of only his photograph.
3. The district court erred by failing to suppress the identification procedure utilized to identify defendant and by failing to find the initial identifications were suggestive.
4. The trial court erroneously forced defense counsel to use a peremptory challenge in an instance in which there was cause to discharge a prospective juror.
5. The trial court erred by not granting defendant's motion for mistrial "when the State's witness testified to the seizure of drug paraphanalia (sic) as the State never offered such evidence for introduction."
6. The trial court erred by failing to grant defendant's motion for post-verdict judgment of acquittal on the bases of the state's having failed to present evidence of defendant's knowledge that the prescription was forged or that he knew the drug was a controlled dangerous substance and that the drug was one listed in the Uniform Controlled Dangerous Substances Law.
7. The trial court erred by not granting defendant's motion for a new trial based on the insufficiency of the evidence.
8. The trial court erred by imposing the maximum sentence.
In brief, defendant additionally argues that his conviction should be reversed in that the trial court erred in refusing to rule on defendant's challenges of prospective jurors for cause until all peremptory challenges had been exhausted. This allegation was not assigned as error and does not constitute error patent on the face of the record. Accordingly, it is not properly before this Court for review. See La.C.Cr.P. arts. 844, 920; State v. Spell, 399 So.2d 551 (La.1981).
FACTS
On June 18, 1985, Duane Dendinger, two other pharmacists and several clerks were working at The Medicine Shoppe, a pharmacy in Slidell. At about 10:45-11:15 a.m., an individual, later identified as defendant, came into the pharmacy and left a prescription with Rhonda Davis, a store clerk. He asked that it be filled and told her he would *200 return to the store later for the filled prescription. Defendant returned about three-five minutes later and asked Davis if the prescription had been filled. Davis then informed Linda Beasley, the pharmacist to whom she had given the prescription, that defendant had returned. Because the name of the patient for whom the prescription had purportedly been written was unclear, Beasley asked Davis to have defendant verify the name. Although it was thought that the first name of the purported patient was "Richard", a determination could not be made as to whether the surname was "Sears" or "Seals". When Davis asked defendant to verify the name, he told her it was his own, i.e., "Richard Sears". Davis wrote that name on the prescription, gave it back to Beasley and told defendant they were busy and additional time would be required to fill the prescription. After defendant verified the name, he stayed inside the pharmacy for a few minutes and then left without ever receiving the filled prescription.
Sometime after the prescription was left by defendant for filling, it was brought to Dendinger's attention. Following a conference with the other pharmacists and a telephone call to the physician upon whose prescription form the prescription had been written, it was determined to be a forgery. The matter was reported to the Slidell City Police Department. After defendant left the drugstore, a store employee was sent outside to determine whether defendant was travelling in a vehicle and, if so, the license number thereof. A description of defendant and his co-defendant, who had also been observed in the pharmacy, and the license number of the vehicle in which the two were riding were given to Detective William McCarter of the Slidell Police Department. McCarty, responding to the report of the incident broadcast the information over his police radio.
At about 12:12-12:30 p.m. that same day, another officer of the Slidell City Police Department located the vehicle, stopped it, and detained the two occupants until McCarter came to the location. Following his arrest of defendant and Kenneth W. Melton, the vehicle's other occupant and co-defendant herein, McCarter photographed both men. Dendinger and Davis were then requested to come to the police station where they were shown two photographs, one of defendant and the other of his co-defendant. Both witnesses identified the picture of defendant and that of the co-defendant.
ASSIGNMENTS OF ERROR NOS. 1, 2 AND 3:
By means of these assignments, defendant contends the district court erred by (1) compelling him to sit next to counsel at the pre-trial suppression hearing, (2) not suppressing his identification through the use of only his photograph, (3) failing to suppress the identification procedure utilized to identify him, and (4) failing to find the initial identifications were suggestive. Defendant argues that the district court's action forcing him to sit at the counsel table during the pre-trial hearing of his motion to suppress prejudiced him and "perpetrated" the suggestive identifications. Defendant further argues that the alleged suggestive initial identifications tainted the subsequent in-court identifications and concludes that the initial and all subsequent identifications should have been suppressed.[1]
In State v. Green, 471 So.2d 1049, 1052 (La.App. 1st Cir.1985) this Court stated:
Several factors must be considered in determining the constitutionality of an out-of-court identification. First, an *201 evaluation must be made of the suggestiveness of the identification procedure. State v. Guillot, 353 So.2d 1005 (La. 1977) [,] writ denied, 367 So.2d 864 (La. 1979). If a witness' attention is focused on defendant during the lineup, the identification procedure is unduly suggestive. State v. Robinson, 386 So.2d 1374 (La. 1980). In reviewing the procedure, the trial court must look at the totality of the circumstances surrounding the identification. State v. Marchese, 430 So.2d 1303 (La.App. 1st Cir.1983).
The circumstances surrounding the out-of-court identification of defendant were adduced at the hearing on the motion to suppress and at the trial.[2] Detective McCarter testified that, on the date of the instant offense following the arrest of defendant and Melton, he personally photographed the two using a Polaroid camera. However, he was not present when Duane Dendinger and Rhonda Davis identified defendant and Melton, by viewing the Polaroid photographs, as the perpetrators of the instant offense.
The testimony of Dendinger and Davis indicates that, about one hour after the occurrence of the instant offense, they received a telephone call from the police department requesting that they come to the police station to view some photographs; and they complied. Davis and Dendinger were shown the photographs, taken by McCarter, one of defendant and one of Melton; and each positively identified the photographs as depicting defendant and Melton, respectively. Dendinger testified that, at the time the photographs were displayed to him, the names of defendant and Melton were not on the reverse side of their respective photographs as they were on the date of the suppression hearing. The testimony of Dendinger and Davis shows that the police only displayed the two photographs to them and asked whether they could identify the individuals depicted in the photographs. The police did not say anything to suggest that the photographs were those of the two individuals who had earlier been inside The Medicine Shoppe. At trial, both Dendinger and Davis made in-court identifications of defendant as the individual who presented the prescription to Davis on the date in question.
In State v. Johnson, 333 So.2d 223 (La. 1976), the victim of a robbery was shown two pictures, one of the defendant and the other of a co-perpetrator after their arrest. From the two pictures, she identified defendant as one of the individuals who participated in the robbery; and at trial she made an in-court identification of defendant. In Johnson, the Louisiana Supreme Court held that, even if the out-of-court photographic identification was tainted, the in-court identification was based on an independent source and was thus free of that taint. The Johnson court noted that while the practice of showing a suspect singly to persons for the purpose of identification, and not as part of a line-up, is not favored, whether or not an impermissibly suggestive identification occurs depends on all the circumstances.
Even if the identification were suggestive, this alone would not indicate a violation of the defendant's right to due process. It is the likelihood of misidentification which violates due process, not merely the suggestive identification procedure. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Guillot, 353 So.2d 1005 (La.1977); State v. Lucky, 453 So.2d 1234 (La.App. 1st Cir.), writ not considered, 459 So.2d 529 (La. 1984). A suggestive identification will not result in reversal of a conviction if it is demonstrated that the identification was reliable. See State v. Lucky, supra. The factors to be used in determining reliability include: (1) the opportunity of the witness *202 to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the description, (4) the witness' level of certainty, and (5) the time between the crime and the confrontation. Manson v. Brathwaite, supra; and State v. Lucky, supra.
Applying the Manson analysis to the instant case, we find that the witness' out-of-court and in-court identifications of defendant were reliable, and that their in-court identifications of him had independent bases.
At the time of the crime, the witnesses viewed defendant while he was inside a presumably well-lighted pharmacy. Defendant initially entered the pharmacy, left the prescription with Rhonda Davis to be filled and departed. About 3-5 minutes later he returned and questioned Davis as to whether it had been filled. He remained inside the pharmacy approximately 3-5 minutes each time. Davis testified at the hearing on the motion to suppress that she had ample opportunity to observe defendant and Melton. Davis was in close proximity to defendant, talking to him both times he was in the pharmacy. Dendinger saw defendant come into the store, leave and then return. At trial, Davis testified her identification was from her independent recollection and not from someone else's suggestion and that the features of defendant's eyes, nose and forehead were of significance in her remembering him. At trial, both Dendinger and Davis viewed and again identified S-2, the photograph of defendant that they previously had identified at the police station after defendant's arrest. Both witnesses indicated defendant looked different, noting he was now clean shaven, better groomed and neater in appearance. Dendinger testified at trial that the difference in defendant's appearance did not cause him any difficulty in identifying defendant in-court because, based upon his experience, at the time of the offense he made a conscious effort to look "long enough" to make an identification. He further testified that he knew Melton, who had been in the pharmacy on previous occasions; and he was positive defendant was the one who presented the prescription to Davis. Davis also made a positive in-court identification of defendant as the individual who presented the prescription to her. Both witnesses' out-of-court identifications of defendant through the photographic display at the police station were also positive. The out-of-court identifications were made on the day of the offense, about an hour thereafter; and approximately five months elapsed between the offense and the in-court identifications. In view of the foregoing facts, we find that the out-of-court and in-court identifications were reliable; and the in-court identifications were independently based.
These assignments have no merit.
ASSIGNMENT OF ERROR NO. 4:
By means of this assignment, defendant asserts that the trial court erroneously forced defense counsel to use a peremptory challenge in an instance in which there was cause to discharge a prospective juror. He argues the juror was obviously prejudiced and the trial court's action denied him the right to trial by a jury of his peers.
Initially, we note that, although defendant refers in brief to prospective juror Karen P. Prude, an examination of the record in conjunction with his assignment of error shows defendant apparently mistakenly referred in his brief to Karen Prude instead of prospective juror June P. Ruble. Accordingly, we will treat this assignment as if it referred to June P. Ruble.
The record reflects that during voir dire examination, in response to questions propounded by the trial court, Ms. Ruble indicated that she knew Dewayne Dendinger, one of the state witnesses. She stated that she and his mother are friends. She has known Dendinger since he was a child and does all her business at his pharmacy. Elaborating on the degree of her knowledge of him, she responded that her knowledge of him is more than an acquaintanceship. She knows him "fairly well". She further indicated that she did not know whether or not she could be fair in the instant case, being inclined to give Dendinger's *203 testimony more weight than anyone else's testimony. The prosecutor and defense counsel did not ask Ms. Ruble any questions in regard to her knowledge of Dendinger.
Thereafter, following the conclusion of all questioning of the prospective jurors, the trial court asked for and received the affirmance of the prosecutor and defense counsel that they were ready to select the members of the jury. When Ms. Ruble's name was announced by the trial court, the following exchange occurred:
BY MR. WILLIAMS: State would accept Ms. Ruble.
BY MR. SCHWEHM: Defense would
BY THE COURT: Go ahead and state your objection now.
BY MR. ROBINSON: Your Honor, I would move that Ms. Ruble be excused for cause. I believe she stated that she was unable to renderto give more attention to a witness's testimony
BY THE COURT: I'm not going to excuse her for cause at this time. You're going to have to exercise your other challenges.
BY MR. ROBINSON: Your Honor, I would object to that procedure.
BY THE COURT: Are you going to excuse her?
BY MR. ROBINSON: Yes, Your Honor. Defense would excuse her.
BY THE COURT: Step down. Thank you.
BY MR. ROBINSON: Your Honor, I object for the record to having had to exercise a challenge on that matter.
BY THE COURT: Note the objection.
BY MR. ROBINSON: Thank you.
Act 181 of 1983 amended La.C.Cr.P. art. 800 to remove the requirement that a defendant exhaust all his peremptory challenges before he can complain of a trial court ruling refusing to sustain a challenge for cause. State v. Edwards, 459 So.2d 1291 (La.App. 1st Cir.1984). Although defendant in the instant case used only four of his six available peremptory challenges, he may nonetheless obtain review of the trial court's ruling on his challenge for cause since his trial occurred subsequent to the effective date of Act 181 of 1983.
Following the 1983 legislative amendment to La.C.Cr.P. art. 800, Louisiana State University Professor of Law, Francis C. Sullivan, in Developments in the Law, 1982-1983 Criminal Trial Procedure, 44 La.L.Rev. 301, 324-325 (1983) commented:
Under the past practice in Louisiana, a defendant was severely limited in objecting to the trial court's refusal to sustain his challenge for cause because of the statutory requirement that such an objection could be made only when all of the peremptory challenges available to the accused had been exhausted during the voir dire examination. The theory of the rule was that defendant could show no prejudice from a ruling on the challenge for cause unless the challenged juror could not have been excused through the exercise of a peremptory challenge. The rule, of course, failed to fully appreciate the effect of the tendering doctrine in article 788 of the Code of Criminal Procedure, requiring that peremptory challenges be exercised individually and per tendered juror rather than in one group. The legislature finally abolished this rule in the 1983 regular session, by requiring only that a contemporaneous objection be made to the action of the court. The question of prejudice can hardly be ignored, however. Both trial courts and reviewing courts have displayed a substantial degree of reluctance to grant challenges for cause, and it is in this context that a defendant must make the difficult choice whether to gamble either on the lack of prejudice of the particular juror or on the fact that relief may be granted by a reviewing court based upon the denial of the challenge for cause, or whether, as a matter of sound trial practice, when in doubt, to use an available peremptory challenge. The choice for defense counsel is indeed a difficult one and probably the amendment to the Code of Criminal Procedure *204 does little to assist in making the proper decision.
(Footnotes omitted. Emphasis added.)
Both the Federal and State Constitutions provide that a defendant in a criminal prosecution has a right to a trial by an impartial jury. U.S. Const.Amend. VI; La. Const. art. I, § 16. State v. Domino, 444 So.2d 268 (La.App. 1st Cir.1983). In State v. Lewis, 391 So.2d 1156, 1158 (La.1980), the Supreme Court stated that:
The defendant is denied due process of law where circumstances affecting the juror exist which would offer a possible temptation to the average man to forget the burden of proof required to convict the defendant or which might lead him not to hold the balance nice, clear and true between the state and the accused.
La.C.Cr.P. art. 797(3) provides that:
The state or the defendant may challenge a juror for cause on the ground that:
* * * * * *
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
* * * * * *
A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied. State v. Jones, 474 So.2d 919 (La.1985), cert. denied, ___ U.S. ____, 106 S.Ct. 2906, 90 L.Ed.2d 993 (1986). A trial court is accorded great discretion in determining whether to seat or reject a juror for cause, and such rulings will not be disturbed unless a review of the voir dire as a whole indicates an abuse of that discretion. Id.
In the instant case, the responses given during voir dire to the trial court's questions to Ms. Ruble show that she did not know whether or not her relationship with Dendinger would allow her to be fair during the trial. Furthermore, her responses indicated she would be inclined to give Dendinger's testimony more weight than that of another witness. Under these circumstances it is reasonable to conclude that her relationship with Dendinger was such that it would influence Ms. Ruble in arriving at a verdict if she were seated as a juror. See La.C.Cr.P. art. 797(3).
Although we find that the trial judge abused his discretion in refusing to sustain defendant's challenge for cause, we conclude that the error was harmless under the instant facts. La.C.Cr.P. art. 921 provides that a judgment or ruling shall not be reversed by an appellate court because of an error which does not affect substantial rights of the accused.
While La.C.Cr.P. art. 800, as amended, no longer requires that the defendant exhaust his peremptory challenges in order to assign as error the denial of a challenge for cause, that Article does not provide that the erroneous denial of a challenge for cause is automatically reversible error. Defendant must still demonstrate prejudice arising from the ruling. Herein, no such prejudice exists because the prospective juror was removed by peremptory challenge and defendant still retained two unused peremptory challenges at the close of jury selection. Under these circumstances, while erroneous, the trial court's ruling did not affect defendant's substantial rights.[3]
This assignment lacks merit.
ASSIGNMENT OF ERROR NO. 5:
By means of this assignment, defendant asserts that the trial court erred by failing to grant his motion for mistrial "when the State's witness testified to the seizure of *205 drug pharaphanalia (sic) as the State never offered such evidence for introduction." He argues that the witness' reference to the "seizure of drug paraphanalia" (sic) was unsolicited and prejudicial to him and that a mistrial should have been declared.
The testimony to which this assigned error relates occurred on cross-examination of state witness William McCarter as follows:
Q But did you not tell me last week that you seized drugs?
A I don't recall whether I did or not. What I probably would have answered is, if I did, it would have been turned into evidence. I recall you asking me about the hypodermic needles.
Thereupon, the trial court admonished the witness not to make any comments at that time, and defense counsel moved for a mistrial. A bench conference was then held outside the hearing of the jury. In denying the motion for mistrial, the trial court concluded that the witness' reference to hypodermic syringes was totally volunteered by the witness but was not prejudicial to defendant. Thereafter, at the request of defense counsel, the trial court admonished the jury to disregard McCarter's testimony regarding hypodermic needles and particularly not to consider that testimony as evidence and not to consider it in any way during their deliberations.
Although defendant did not assert any specific statutory basis for mistrial in arguments before the trial court or in brief on appeal, we assume his argument relies upon the provisions of La.C.Cr.P. art. 771, which provides in pertinent part:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
* * * * * *
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.[4]
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
Mistrial is a drastic remedy and, except in instances in which mistrial is mandatory, is warranted only when a trial error results in substantial prejudice to defendant depriving him of a reasonable expectation of a fair trial. State v. Overton, 337 So.2d 1058 (La.1976). Although a potentially prejudicial remark by an experienced police officer should be viewed with concern as to fairness of the trial, the decision as to the necessity of granting a mistrial is within the sound discretion of the trial court. State v. Gibson, 459 So.2d 1294 (La.App. 1st Cir.1984).
Under the circumstances of this case, we find that the trial court did not abuse its discretion in refusing to order a mistrial, and the trial court's admonition to the jury was sufficient to cure any possible prejudice resulting from the detective's remark.
This assignment lacks merit.
ASSIGNMENTS OF ERROR 6 AND 7
By means of these assignments, defendant asserts that the trial court erred by failing to grant his motion for post-verdict judgment of acquittal on the bases of the state's failure to prove that he knew the prescription was forged, that he knew the drug was a controlled dangerous substance and that the drug was one listed in the *206 Uniform Controlled Dangerous Substances Law. He also contends that the trial court erred by failing to grant his motion for new trial on the same basis of insufficiency of the evidence alleged in the motion for post-verdict judgment of acquittal. Defendant argues that the evidence only shows he "may have presented a prescription to a pharmacy in a name other than his own, and that his doctor, upon whose prescription pad it was written, did not write the prescription."
The standard of review for sufficiency of the evidence to support a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the state proved the essential elements of the crime and defendant's identity as perpetrator of that crime beyond a reasonable doubt. La.C.Cr.P. art. 821; State v. Moore, 477 So.2d 1231 (La.App. 1st Cir.1985), writs denied, 480 So.2d 739 and 741 (La.1986). The statutory rule as to circumstantial evidence is, "[A]ssuming every fact proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La.R.S. 15:438. However, where circumstantial evidence is used to convict, exclusion of every other reasonable hypothesis of innocence is simply a component of the more comprehensive reasonable doubt standard, providing an evidentiary guideline for a jury and facilitating an appellate court in determining whether a rational juror could have found guilt beyond a reasonable doubt. State v. Nealy, 450 So.2d 634 (La. 1984); State v. Moore, supra.
The elements of possession of a controlled dangerous substance by means of fraud are set forth in La.R.S. 40:971(B)(1)(b), which provides as follows:
B. (1) It shall be unlawful for any person knowingly or intentionally:
* * * * * *
(b) To acquire or obtain possession of a controlled dangerous substance by misrepresentation, fraud, forgery, deception or subterfuge....
In narcotics and drug offense cases the state must show that the offender had guilty knowledge of the illegality of the drug. See State v. 1971 Green GMC Van, 354 So.2d 479 (La.1977); State v. Tasker, 448 So.2d 1311 (La.App. 1st Cir.), writ denied, 450 So.2d 644 (La.1984). Whether the accused knew the substance was an illegal drug is a matter of proof by direct or circumstantial evidence. State v. Goiner, 410 So.2d 1085 (La.1982).
In order to obtain a conviction for a violation of La.R.S. 40:971(B)(1)(b) predicated on the use of a forged prescription, the state must offer sufficient proof of the requisite element of the offender's guilty knowledge, from which a trier of fact might conclude beyond any reasonable doubt that the offender knowingly used a forged prescription to acquire or obtain a controlled dangerous substance. See State v. Scott, 456 So.2d 1383 (La.1984); State v. Mitchell, 421 So.2d 851 (La.1982); State v. Custard, 384 So.2d 428 (La.1980).
Although intent is a question of fact, it need not be proven as a fact but may be, and generally is, inferred from the circumstances of a transaction. La.R.S. 15:445; State v. Custard, supra. Consequently, the state may rely on circumstantial evidence to prove defendant "knowingly or intentionally" attempted to acquire or obtain a controlled dangerous substance with a forged prescription. We must look to inferences made by the trier of fact based on circumstantial evidence. These inferences need only exclude all other reasonable hypotheses, not every possible theory of innocence. State v. Moore, supra.
The evidence reflects defendant entered The Medicine Shoppe on the day in question, presented a prescription to Rhonda Davis, asked that it be filled and indicated he would be waiting for the filled prescription. He then left the pharmacy. Davis handed the prescription to Linda Beasley, one of the pharmacists working in the pharmacy at the time.
The prescription, introduced into evidence by the state as S-3, was purportedly *207 made out to "Richard Sears" for one hundred valium tablets. It was written on a printed form bearing the printed name and address of Dr. R.L. Nix and his purported signature. Duane Dendinger, the owner-operator of the pharmacy, testified the prescription was brought to his attention and that it did not look "proper". He testified he was extremely familiar with Dr. Nix's handwriting, that he conferred with the other pharmacists on duty and that a conclusion was reached that the prescription had not been written by Dr. Nix, whose office was then telephoned.
At trial, Dr. Nix identified the prescription as having been written on one of his printed prescription forms and confirmed it was a forgery. Dr. Nix testified that "obviously" the form had been stolen, that he had no idea who had written it, and that he did not have a patient named "Richard Sears".
About 3-5 minutes after defendant left the pharmacy following his submission of the forged prescription to Davis, he returned and questioned her concerning the prescription. She told Linda Beasley that defendant had returned. Beasley instructed Davis to verify the name of the person for whom the prescription was purportedly written since it was not clear if the individual's surname was "Sears" or "Seals". Davis complied by questioning defendant in regard to the name. Davis testified that defendant told her the name was "Richard Sears", his correct name; and she then wrote that name at the top of the prescription and returned it to the pharmacist. Defendant remained inside the pharmacy a few minutes and then left without ever receiving the filled prescription.
Kenneth Melton testified as a defense witness. He stated that he is a diabetic and on the day in question defendant had driven him to The Medicine Shoppe because he was out of insulin. Melton testified that defendant went inside the pharmacy for about 30-60 seconds to check on him and then returned to the car to wait for him. He denied that defendant had ever gone to the counter in the pharmacy. Melton denied that he had a prescription and specifically denied any knowledge of a prescription for valium being presented at the pharmacy.
The jury's verdict speaks loud and clear to its acceptance of the testimony of the state's witnesses and rejection of Kenneth Melton's. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Mullins, 464 So.2d 459 (La.App. 1st Cir.1985). Applying the statutory rule as to circumstantial evidence as a component of the more comprehensive reasonable doubt standard, we find that the evidence supports the trier of fact's finding of guilty of the offense of attempted possession of a controlled dangerous substance by means of fraud. The requisite element of defendant's guilty knowledge, which was found lacking in State v. Scott, 456 So.2d 1383 (La.1984), could have reasonably been inferred by the trier of fact on the basis of Davis' testimony that defendant represented himself as "Richard Sears". Additionally, and contrary to defendant's assertion that the state failed to introduce evidence showing the substance sought to be obtained or acquired was a listed controlled dangerous substance, the forged prescription (S-3) evinces the substance was valium, the tradename for diazepam, a Schedule IV drug listed in La.R.S. 40:964 Schedule IV(A)(17). Cf State v. Malonson, 454 So.2d 371 (La.App. 4th Cir.1984).
Clearly, the evidence was sufficient to support defendant's conviction in this case.
These assignments are without merit.
ASSIGNMENT OF ERROR NO. 8
By means of this assignment defendant contends the trial court erred by imposing an excessive sentence, the maximum.
Article I, § 20 of the Louisiana Constitution prohibits the imposition of excessive punishment. Excessiveness of a sentence is a question of law which is reviewable on appeal. See State v. Sepulvado, 367 So.2d 762 (La.1979). A sentence may be excessive either by reason of its length or because the circumstances warrant *208 a less onerous sentencing alternative. State v. Telsee, 425 So.2d 1251 (La.1983). In other words, a sentence may be within the statutory limits and yet constitutionally excessive. State v. Sepulvado, supra. A sentence is excessive when it is grossly out of proportion to the severity of the offense or nothing more than the needless and purposeless imposition of pain and suffering. To determine whether a penalty is grossly disproportionate to the crime, the court considers the punishment and the crime inlight of the harm to society and whether the penalty is so disproportionate as to shock our sense of justice. State v. Bonanno, 384 So.2d 355 (La.1980). Maximum sentences are imposed for the most serious violations of the described offense and for the worst kind of offender. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Leason, 477 So.2d 771 (La.App. 1st Cir.1985). Because of the wide discretion afforded the trial court in imposing sentence, a sentence within statutory limits will not be set aside as excessive in the absence of a manifest abuse of discretion. State v. Abercrumbia, 412 So.2d 1027 (La.1982).
Attempted possession of a controlled dangerous substance by fraud is punishable by imprisonment, with or without hard labor, for not more than two and one-half years and a possible fine of not more than two thousand five hundred dollars. La. R.S. 40:971(B)(2) and 979(A). Herein, defendant was sentenced to the maximum term of imprisonment at hard labor, and no fine was imposed.
The record reflects that the trial court ordered a pre-sentence investigation report which it reviewed prior to sentencing defendant. The pre-sentence investigation report discloses that defendant was twenty-nine years old at the time of the instant offense and that he was classified as a second felony offender by virtue of a conviction which apparently resulted from his having been booked with "possession and distribution"[5] of marijuana. Defendant was given a four year sentence at hard labor for that conviction which was suspended, and he was placed on probation for the four year suspended term. The instant offense occurred during the period of the foregoing probated sentence. The report further discloses that defendant's adult criminal record also includes several other arrests for possession of marijuana, an arrest for possession of marijuana, preludin, and quaalude, and an arrest for disturbing the peace by fighting. The report also shows that subsequent to the instant offense defendant was arrested for disturbing the peace and simple battery.
The pre-sentence investigation report concludes with a recommendation that in light of defendant's extensive criminal record, which includes at least five arrests for drug or alcohol-related crimes and two crimes against the person, he be placed in an institutional environment for the maximum period provided by law.
At sentencing, the trial court noted that it had carefully studied the pre-sentence investigation report and that it had taken into consideration the factors in mitigation which defendant had brought to the court's attention. In alluding to La.C.Cr.P. art. 894.1, the court noted that in light of those sentencing guidelines because defendant had been previously sentenced to the four year probated sentence, referred to in the pre-sentence investigation report, and defendant's prior conviction for a drug related offense, defendant is in need of correctional treatment in a custodial environment that can be provided most effectively by the Department of Corrections. The court opined that there is a possible undue risk that during a period of suspended sentence or probation that defendant would commit another drug-related crime. The court further noted that a lesser sentence would deprecate the seriousness of the crime. We note further that the statutory law prohibits suspension of sentence where the *209 offender has previously been convicted of a felony offense.
The sentence imposed on defendant in this case is not apparently severe in relation to defendant or the offense committed. Undoubtedly defendant's record of repeated criminality demonstrates that he poses a serious risk to the public through his criminal conduct. Under the facts of this case, we cannot say that the trial court exceeded the wide limits of sentencing discretion available to it in imposing the maximum term of confinement for the offense. Accordingly, we do not find defendant's sentence excessive.
This assignment lacks merit.

DECREE
For the foregoing reasons the conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] To the extent that defendant's argument relates to allegations of tainted, in-court, trial identifications of him, those allegations exceed the scope of assignments of error one, two and three. Each of those assignments by their express terms allege error only by Judge France W. Watts, III, before whom the suppression hearing was conducted, and do not allege any error by Judge James B. Strain, Jr., the merit trial judge. Accordingly, any contentions that the trial court erred by allowing in-court identifications of defendant into evidence are not properly before this Court on appeal, since those contentions were not assigned as error and do not constitute error patent. See La.C. Cr.P. arts. 844, 920; State v. Spell, 399 So.2d 551 (La.1981). Nonetheless, we will consider the merits of those contentions in this case.
[2] In making a determination of whether or not a ruling on a motion to suppress was correct, we are not limited to the evidence adduced at the hearing on that motion. We may consider all pertinent evidence given at the trial of the case. State v. Chopin, 372 So.2d 1222, 1223 n. 2 (La.1979); State v. Fleming, 457 So.2d 1232, 1234 n. 3 (La.App. 1st Cir.1984), writ denied, 462 So.2d 191 (La.1984).
[3] See our Supreme Court's most recent discussion of this subject matter in State v. David R. Vanderpool, 493 So.2d 574 (La.1986).
[4] Because the alleged improper statement was made by a police officer, it falls outside the purview of the mandatory provisions of La.C. Cr.P. art. 770, which apply to remarks or comments made by the judge, district attorney or a court official. See State v. Smith, 418 So.2d 515 (La.1982).
[5] The pre-sentence investigation report does not indicate the specific crime for which defendant was sentenced on the booking "possession and distribution" of marijuana; however, the sentence indicates clearly that the offense was a felony and not a misdemeanor.